UNITED STATES v. COLE et al.

(District Court, W. D. Texas, San Antonio Division. May 17, 1907.)

No. 1,956.

1. CONSPIRACY—WHAT CONSTITUTES.

A conspiracy is formed when two or more persons in any manner, or through any contrivance, positively or tacitly come to a mutual understanding to accomplish a crime or unlawful purpose.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, §§ 30–39.]

2. SAME—ELEMENTS—OVERT ACT.

In order to establish a conspiracy to commit an offense against the United States in violation of 1 Rev. St. Supp. (2d Ed.) p. 264, c. 8 [U. S. Comp. St. 1901, p. 3676], there must not only be an agreement or combination to commit a crime or unlawful purpose, but also an overt act apart from the conspiracy, done to carry into effect the object of the original combination.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, §§ 38, 39.]

3. SAME—KNOWLEDGE OF GUILT—EVIDENCE.

Guilty connection of a conspirator may be established by showing association by the persons accused in and for the purpose of procuring the illegal object.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, §§ 100–101.]

153 F.—51

4. SLAVES—PEONAGE—DEFINITION.

Peonage is the status or condition of compulsory service in payment of an alleged indebtedness by the peon to his master.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Slaves, §§ 1, 2.]

5. CRIMINAL LAW—CREDIBILITY OF WITNESSES—PROVINCE OF JURY.

The jury, being the exclusive judges of the credibility of the witnesses, are entitled to determine for themselves what portion of conflicting testimony is most worthy of belief, though they should endeavor to reconcile and harmonize it, if possible.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1714.]

6. SAME.

In determining the weight to be given to the testimony of a witness, the jury should consider his relationship to the parties, his means of information, and opportunity of knowing the facts to which he testifies, his manner and bearing in testifying, together with his interest in the controversy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1252.]

7. SAME—INNOCENCE OF ACCUSED—PRESUMPTIONS.

In a criminal case the presumption of law is in favor of the innocence of the accused until his guilt has been established to the satisfaction of the jury beyond a reasonable doubt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 731–737.]

Charles A. Boynton, U. S. Atty., and Charles C. Cresson, Jr., Asst. U. S. Atty.

A. W. Houston, Jake Wolters, Frank Stubbs, Robt. T. Neill, and Geo. B. Taliaferro, for defendants.

MAXEY, District Judge (charging jury). The indictment against the defendants contains two counts. Both counts charge a conspiracy; the first to hold in a condition of peonage one Judge Johnson, and the second to hold in a condition of peonage Hagar Johnson. In the first count it is charged that the defendants conspired and agreed to hold the said Judge Johnson in a condition of peonage by, deceitfully and against his will, carrying him from Seguin, Tex., to the parish of Ouachita, in the state of Louisiana, and there to compel the said Judge Johnson against his will to work for J. T. Cole in payment of a debt claimed by Cole as due and owing him by Judge Johnson. It is further charged that, afterwards, on the same day, in pursuance of the conspiracy, and to effect the object of the same, the said J. T. Cole unlawfully and against Johnson's will carried him from Seguin, Tex., to the parish of Ouachita, in the state of Louisiana, and there forcibly and against Johnson's will compelled him to perform labor and service for him (Cole) in payment of a debt claimed by Cole as due and owing him by Johnson. The second count, as before observed, is practically the same as the first, except that the defendants are charged with a conspiracy to hold in a condition of peonage Hagar Johnson.

The statute upon which the indictment is based provides as follows:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner, or for any pur-

pose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty," etc.

See 1 Supp. Rev. St. (2d Ed.) p. 264, c. 8 [U. S. Comp. St. 1901, p. 3676].

In this case it becomes your duty to inquire: (1) Was there such a conspiracy formed as the indictment alleges against the defendants? And (2) if such a conspiracy was formed and existed, were the acts charged in the indictment, to effect the object of the conspiracy, committed as alleged? To arrive at a satisfactory conclusion upon these questions, it is necessary to understand what constitutes conspiracy.

"A conspiracy is formed when two or more persons agree together to do an unlawful act—in other words, when they combine to accomplish, by their united action, a crime or unlawful purpose—and the statutory offense is consummated when such agreement is made and such combination is entered into and one or more of the parties do any act to effect the object of such conspiracy. * * * It is not necessary, to constitute a conspiracy, that two or more persons should meet together and enter into an explicit or formal agreement for the unlawful scheme, or that they should directly, by words or in writing, state what the unlawful scheme is to be and the details of the plans or means by which the unlawful combination is to be made effective. It is sufficient if two or more persons, in any manner, or through any contrivance, positively or tacitly, come to a mutual understanding to accomplish a common and unlawful design. Of course, a mere discussion between parties about entering into a conspiracy, or as to the means to be adopted, for the performance of an unlawful act, does not constitute a conspiracy, unless the scheme, or some proposed scheme, is in fact assented to—concurred in by the parties in some manner, so that their minds meet for the accomplishment of the proposed unlawful act." United States v. Goldberg, 12 Meyer, Fed. Dec. 41, 42, Fed. Cas. No. 15,233.

"A mere agreement or combination to effect an unlawful purpose, not followed by any acts done by either of the parties to carry into execution the object of the conspiracy, does not constitute the offense. There must be both the unlawful agreement or combination, and an act or acts done by one or more of the parties to effect the illegal object or design agreed upon, to make the punishable offense under the statute. Where there is an attempted attainment of an unlawful end by two or more persons, who are actuated by a common design of accomplishing that end, and who in any way, and from any motive, or upon any consideration, work together in furtherance of the unlawful scheme, each one of the persons becomes a member of the conspiracy." Id.

To establish the guilt of the defendants on trial, you must be satisfied from the testimony that a conspiracy was formed and entered into by them, as alleged, to hold in a condition of peonage Judge Johnson and Hagar Johnson, as charged in the indictment; and that to effect the object of the conspiracy the defendant Cole carried them against their will from Seguin, Tex., to Ouachita parish, La., and there forcibly and against their will compelled them to perform labor

and service for him in payment of a debt claimed by Cole to be due and owing him by Judge Johnson and Hagar Johnson.

"To establish a conspiracy, it is not, as has been said, necessary that there should be an explicit and formal agreement for an unlawful scheme between the parties; nor is it essential that direct proof be made of an express agreement to do the act forbidden by the law. It is as competent to prove an alleged conspiracy by circumstances as by direct evidence. In prosecutions for criminal conspiracies, the proof of the combination charged must almost always be extracted from the circumstances connected with the transaction which forms the subject of the accusation. * * * The acts of the parties in the particular case, the nature of those acts, * * * and the character of the transactions or series of transactions, with the accompanying circumstances, as the evidence may disclose them, should be investigated and considered as sources from which evidence may be derived of the existence or nonexistence of an agreement, which may be express or implied, to do the alleged unlawful act."

The crime charged against the defendants is a statutory offense, and all the essentials required by the statute to constitute the offense must be proved before a conviction can be had, and under the statute there must be not only a conspiring together by the parties to commit the offense, but to complete the offense denounced by the statute, the formation of the conspiracy must be followed by the act charged in the indictment to have been done to effect its object, for otherwise the offense would not be made out. "But the moment any act is done to effect the object of the conspiracy, that moment criminal liability is fixed; and this act to effect the object, though it be done by only one of the parties, binds each and all the parties to the conspiracy, and completes the offense as to all, for in that case the act of one becomes the act of both or all."

"This act, to effect the object of the conspiracy, must not be an act which is a part of the conspiracy. It must not be one of a series of acts, constituting the agreement or conspiring together, but it must be a subsequent, independent act, following a completed conspiracy, and done to carry into effect the object of the original combination." And under the law a person, who was not a party to the previous conspiracy, cannot be convicted on the overt act. Employing the language of the Supreme Court: "The gravamen of the offense here is the conspiracy. For this there must be more than one person engaged. Although by the statute something more than the common-law definition of a conspiracy is necessary to complete the offense, to wit, some act done to effect the object of the conspiracy, it remains true that the combination of minds in an unlawful purpose is the foundation of the offense, and that a party who did not join in the previous conspiracy cannot, under this section, be convicted on the overt act." United States v. Hirsch, 100 U. S. 34, 25 L. Ed. 539.

"Guilty connection with a conspiracy may be established by showing association by the persons accused, in and for the purpose of the prosecution of the illegal object. Each party must be actuated by an intent to promote the common design, but each may perform sepa-

rate acts or hold distinct relations in forwarding that design. If two persons pursue by their acts the same object, one performing one act, or part of an act, and the other another act, or another part of the same act, so as to complete it, with a view to the attainment of the object they are pursuing, the jury are at liberty to draw the conclusion that they have been engaged in a conspiracy to effect the object. Co-operation in some form must be shown. There must be intentional participation in the transaction, with a view to the furtherance of the common design and purpose. If parties in any manner work together to advance the unlawful scheme, having its promotion in view, and actuated by the common purpose of accomplishing the unlawful end, they are conspirators. If a person, understanding the unlawful character of a transaction, encourages, advises, or in any manner, with a view to forwarding the enterprise or scheme, assists in its prosecution, he becomes a conspirator." United States v. Goldberg, supra.

As the court has already stated to you, the charge in the indictment is that the defendants conspired to hold Judge Johnson and Hagar Johnson in a condition of peonage by, deceitfully and against their will, carrying them to the parish of Ouachita, La., and compelling them to work for the defendant Cole in payment of a debt claimed by Cole as due and owing from them. In view, then, of the charge contained in the indictment, it becomes necessary to ascertain the meaning of peonage. What is "peonage"? It is said by the Supreme Court, in the case of Clyatt v. United States, 197 U. S. 215, 216, 25 Sup. Ct. 429, 49 L. Ed. 726, and you are so instructed in this case, that peonage "may be defined as a status or condition of compulsory service, based upon the indebtedness of the peon to the master. The basal fact is indebtedness. * * * Peonage, however created, is compulsory service, involuntary servitude. The peon can release himself therefrom, it is true, by the payment of the debt, but otherwise the service is enforced. A clear distinction exists between peonage and the voluntary performance of labor or rendering of service in payment of the debt. In the latter case the debtor, though contracting to pay his indebtedness by labor or service, and subject like any other contractor to an action for damages for breach of that contract, can elect at any time to break it, and no law or force compels performance or a continuance of the service. * * * That which is contemplated by the statute is compulsory service to secure the payment of a debt." Peonage, then, is the status or condition of compulsory service; the basal fact being indebtedness.

In the ordinary affairs of life, a man may contract for the payment of a debt by the performance of personal service. This, when voluntarily done, when force or compulsion is not exercised on the part of the creditor to compel the performance of the service, is lawful; but compulsory service—that is, service performed by one person under force exerted by another to pay a debt—is unlawful and denounced by the law. You thus perceive the meaning of the term "peonage" as used in the statute. The theory of counsel for the government is that Judge Johnson and Hagar Johnson entered into a contract at Seguin, Tex., to perform labor on a farm at Wilmot, Ark.,

and that, instead of being carried.to Wilmot, Ark., they were deceived by the defendants and transported to Monroe, La., which is located in the parish of Ouachita, and there compelled to labor on the farm or plantation of the defendant Cole. It is further insisted by counsel for the government that, after Judge and Hagar Johnson arrived at the plantation of the defendant Cole, they were required by Cole to remain on the plantation and perform service for him to pay a certain indebtedness claimed by Cole as due and owing by Judge and Hagar Johnson, amounting to a sum between $60 and $100. The exact amount it is not necessary to determine, but the items consisted of railroad fare paid by Cole from Texas to Monroe, La., together with freight paid by him for transporting household and kitchen furniture and other articles, and also a few items of indebtedness paid by Cole for Judge Johnson at Seguin, Tex. The defendants, on the other hand, deny the charge of conspiracy, and deny that Judge and Hagar Johnson were held in a condition of peonage by Cole after their arrival at Cole's plantation in Louisiana.

If you find from the evidence that a conspiracy did not exist, as charged in the indictment, between Cook and Cole, for the purpose in the indictment specified, then your verdict should be in favor of the defendants. In determining the question of the existence or nonexistence of a conspiracy, you will carefully consider all the facts and circumstances in evidence, and from a consideration of them all you will reach such a conclusion as is just, right, and proper in the premises. In this connection you are further instructed that, if you find from the testimony that there was such a conspiracy between the defendants as charged in the indictment, and that in pursuance, and to effect the object, of the conspiracy, Cole carried Judge Johnson and Hagar Johnson from Seguin, Tex., to the parish of Ouachita, La., and there forcibly and against their will compelled them to perform labor and service for him in payment of a debt claimed by Cole as due and owing by them, then you should return a verdict against the defendants. As before intimated by the court, peonage is involuntary service; that is, service performed against the will of the party who performs it, and as a result of force or compulsion exerted by the party who requires the service. If, then, the service performed by Judge and Hagar Johnson on the plantation of Cole was purely voluntary on their part, and was not the result of force exerted by Cole, your verdict should be in favor of the defendants, for in such case there would be no violation of the statute. Look, then, to and consider all the facts and circumstances in evidence before you, and determine: (1) Whether the defendants conspired together to hold in a condition of peonage Judge and Hagar Johnson, as in the indictment charged; and (2) did Cole, in furtherance, and to effect the object, of the conspiracy, carry Judge and Hagar Johnson to Monroe, La., and compel them against their will to perform labor and service for him in payment of a debt as charged in the indictment? If you are satisfied, from a consideration of the testimony, beyond a reasonable doubt, that the defendants are guilty of conspiracy as specifically alleged in the indictment, it is your duty to so find. If, however, you

entertain a reasonable, well-founded doubt of their guilt, you should give them the benefit of it and acquit them.

You are further instructed that you are the exclusive judges of the credibility of the witnesses and of the weight to be attached to their testimony, and, in weighing and considering the testimony before you, you should endeavor to reconcile and harmonize it, if you can. When this cannot be done, you may determine for yourselves what portion of the conflicting testimony is most worthy of belief. "The court can only give you a few general rules as guides for weighing and deciding between testimony that cannot be reconciled. You should look to the circumstances surrounding the respective witnesses and to the way in which they testify, in considering the weight to be given their testimony; to their relationship to the parties on trial and their means of information and opportunity of knowing the facts whereof they speak. You should also consider the manner and bearing of the witnesses in testifying. Do they show a zeal in stating facts favorable to one side, and reluctance in disclosing facts that would benefit the other? Do they testify in that frank, candid, and straight forward way which a witness should do under the solemnity of an oath; or do they evade and equivocate? You should also look to the consistency of their testimony. You should especially look to the interest which the witnesses have in the suit or in its result. Where the witness has a direct, personal interest in the result of the suit, the temptation is strong to color, pervert, or withhold the facts. The law permits a defendant at his own request to testify in his own behalf. The defendant Cole has availed himself of this privilege. His testimony is before you, and you must determine how far it is credible. The deep personal interest which a defendant has in the result of the suit should be considered by the jury in weighing his evidence, and in determining how far, or to what extent, if at all, he is worthy of credit." See Reagan v. United States, 157 U. S. 301, 15 Sup. Ct. 610, 39 L. Ed. 709.

You are further instructed that in criminal cases the presumption of law is in favor of the innocence of the defendant until his guilt shall have been established to the satisfaction of the jury beyond a reasonable doubt; and if, from an examination and consideration of all the facts and circumstances in evidence, taken in connection with the charge of the court, you are satisfied beyond a reasonable doubt that the defendants are guilty as charged in both counts of the indictment, then you should find them guilty accordingly, in which event your verdict will be in the following form: "We, the jury, find the defendants, J. T. Cole and M. Z. Cook, guilty as charged in the indictment." If you find the defendants guilty under one count, and not guilty as to the other, you will frame your verdict accordingly, specifying under which count you find them guilty, and under which count not guilty. If, on the other hand, your verdict be in favor of the defendants on both counts, you will simply say: "We, the jury, find the defendants not guilty."

It is needless for me to say to you, gentlemen of the jury, that the case on trial is of importance both to the government and to the defendants. In no case can a jury perform a higher or nobler duty

than a true verdict render, according to the law and the evidence. When that is done, your whole duty is accomplished; and in this case the court feels assured that you will perform that duty with fairness and impartiality. Consider it calmly and dispassionately, with an eye single to reaching a just conclusion in view of the evidence and these instructions.

### Application for Special Instruction.

"Before you can convict the defendants, J. T. Cole and M. Z. Cook, you must believe beyond a reasonable doubt that the defendants entered into a conspiracy in Seguin, in Guadalupe county, in the Western district of Texas, and unless you believe beyond a reasonable doubt, not only that a conspiracy was formed, but that it was formed at Seguin, in Guadalupe county, in the Western district of Texas, you must find the defendants not guilty.

"The defendants J. T. Cole and M. Z. Cook request that the above special charge No. 1 be given.

"J. T. Cole and M. Z. Cook, by Their Attorneys."

The foregoing special instruction is given, with this explanation: It is true that, before you can convict the defendants, you must believe, beyond a reasonable doubt, that they entered into a conspiracy, as charged in the indictment, in Seguin, Guadalupe county, Tex.; but it is not necessary that the overt act—that is, the act to effect the object of the conspiracy—as charged in the indictment, should have been committed in Seguin, Guadalupe county, for if the proof shows that the overt act was committed there, or in the state of Louisiana, it would be sufficient. See, Hyde v. Shine, 199 U. S. 76, 77, 25 Sup. Ct. 760, 50 L. Ed. 90.

You will consider this special instruction in connection with the general charge of the court.

NOTE.—Upon the first trial the jury failed to agree upon a verdict. The second trial resulted in a verdict of not guilty.