UNITED STATES v. PHILADELPHIA & R. RY. CO.

(District Court, E. D. Pennsylvania. May 26, 1916.)

Nos. 19, 20.

1. CARRIERS &⇒38—CARRIAGE OF GOODS—DISCRIMINATION—INDICTMENTS.

The tariffs filed by defendant railroad company, an interstate carrier, with the Interstate Commerce Commission, provided for demurrage charges of one dollar per day for each car for each day's detention after 15 days from the date notice of arrival of coal cars should be sent to the consignee. The indictment, charging that defendant knowingly granted concessions to consignees in respect to interstate commerce shipments of coal, averred that coal cars were held up at a point some miles from point of destination where the coal was to be reshipped; and that no demurrage charges were made, though the coal was kept for periods beyond the 15 days allowed. *Held*, that an indictment should contain averments of every fact necessary to constitute the crime charged, and as nothing can be charged by implication, the indictment was insufficient to show a discrimination, in that it did not show that the delay was at the request of the consignees or for their benefit, or that such delay was had at the point before the shipment reached destination to evade the terminal charges.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 96, 97; Dec. Dig. &⇒38.]

2. CARRIERS &⇒100(1)—DEMURRAGE—RIGHT TO CHARGE.

Demurrage charges cannot be imposed by a carrier, though notice of arrival of goods or car shipment is given, until the shipment has actually arrived.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–430, 432, 433; Dec. Dig. &⇒100(1).]

At Law. Indictments against the Philadelphia & Reading Railway Company. On demurrer. Demurrer sustained.

Alexander H. Elder, Sp. Asst. U. S. Atty., of Washington, D. C., Robert J. Sterrett, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa.

Wm. Clarke Mason and Charles Heebner, both of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. Indictment No. 19, in each of the several counts, charges the defendant with having knowingly granted to various consignees concessions in respect to transportation in interstate commerce of certain carloads of coal. It is alleged that the coal in question was shipped from points in West Virginia and Maryland over connecting lines and over the line of the defendant to Port Richmond, Philadelphia. The concessions are alleged to have consisted in failing and neglecting to assess against the respective consignees any demurrage charge for the detention of the respective carloads of coal, failing to make an entry upon the defendant's books covering the demurrage charge, and failing to collect payment for demurrage. The claim that a demurrage charge accrued is based upon a certain tariff published and filed with the Interstate Commerce Commission, and the tariff is described in the indictment as:

"Showing among other things the terminal demurrage charges assessable by said Philadelphia & Reading Railway Company in addition to the transportation charges aforesaid for the detention by or for consignees by reason of the failure of such consignees to release the same of cars used by the said corporation common carriers in the interstate transportation of bituminous coal shipped to Port Richmond (Philadelphia) aforesaid, for transshipment at that point direct to vessel when held for or by consignees for unloading, forwarding instructions, or for any other purpose, that is to say, showing that the charge for such demurrage was one dollar ($1.00) per car per day or fraction thereof for the time of such detention, such time to be computed as beginning fifteen days (excluding Sundays and holidays) after the first seven a. m. after the date on which notice of arrival is sent to the consignee."

It is then alleged that:

Immediately prior to the respective dates set out in the counts, "a certain carload of bituminous coal contained in a car bearing the initials" (varying in each count) "and the number" (varying in each count) "which had been shipped to Port Richmond, Philadelphia, aforesaid, for transshipment as aforesaid, was transported over one of the routes aforesaid, from" (place of origin of shipment and route) "into the said Eastern district of Pennsylvania to Woodlane Yard, a point on the rails of the Philadelphia & Reading Railway Company, in the state of Pennsylvania, about eight (8) miles from Port Richmond (Philadelphia) aforesaid, the transportation thereof being conducted into said district in the said car consigned to" (name of consignee); "that on the date last aforesaid a notice of arrival of said car containing said coal was sent by the said Philadelphia & Reading Railway Company from Port Richmond (Philadelphia) aforesaid to the said consignee; that said car was not promptly released by said consignee, but was held for said consignee by said Philadelphia & Reading Railway Company until" (date of end of detention and length of time beyond the free time allowed); "that after said detention said car was released by said consignee, and said coal was, upon the order of said consignee, dumped from said car into a vessel at Port Richmond (Philadelphia) aforesaid."

Then follow allegations that a demurrage charge had accrued to and should have been assessed and collected from the consignees in accordance with the tariffs and schedules, and an allegation of failure and neglect to assess any demurrage charge, failure to make or enter a charge upon the books of the defendant, and failure to collect the demurrage.

Then follows an allegation that the defendant transported the carload of coal into the Eastern district of Pennsylvania, "and by the device of detaining said car at Woodlane Yard aforesaid, and not assessing or collecting demurrage for such detention as. hereinbefore set forth, unlawfully did knowingly offer, give and grant to the said consignee a concession * * * in respect to the said transportation in interstate commerce of said coal."

In indictment No. 20, the same facts are set out as a basis for a charge that the defendant willfully failed to strictly observe the provisions of the established demurrage tariffs.

[1] The demurrer is based upon the contention that the indictment does not sufficiently set out facts to sustain a charge that, under the schedules and tariffs alleged to have been published and filed by the defendant, any charge for terminal demurrage might lawfully have been assessed or collected by the defendant, and therefore does not charge a violation of the Elkins Act (Act Feb. 19, 1903,

c. 708, 32 Stat. 847 [Comp. St. 1913, §§ 8597-8599]), under which the indictment is framed.

The tariff is described as showing the terminal demurrage charges assessable for the detention for or by the consignees by reason of failure of such consignees to release cars used in transportation of coal shipped to Port Richmond when held for or by consignees for unloading, forwarding instructions, or for any other purpose. The carload is alleged to have been "shipped," which, the government contends, is synonymous with "billed," from a point outside the state of Pennsylvania to Port Richmond. It is not alleged in the indictment that the coal had been transported to Port Richmond at the time the alleged detention occurred, but the transportation alleged is to Woodlane Yard, a point on the rails of the defendant about eight miles from Port Richmond

There is no allegation that the tariff in question showed demurrage charges assessable for detention in transit, and there is no allegation that a delivery at Woodlane Yard was, within the terms of the shipment, a delivery at the terminus of the shipment, which is alleged to be Port Richmond, and there is no allegation that the carload was held at that destination for or by the consignee for unloading, forwarding instructions, or for any other purpose specified in the demurrage tariff.

It is alleged that the said car was not promptly released by said consignee, but was held for said consignee by the defendant, and that, after said detention, the car was released by the consignee, and the coal, upon the order of the consignee, dumped from the car into a vessel at Port Richmond. But there is no provision of the tariff set out showing that demurrage charges would accrue if the car was not released by the consignee while detained or held for the consignee at Woodlane Yard, and it is not alleged that the detention at Woodlane Yard was at the request or instance of the consignee.

In the absence of any allegation that the car was held for or by the consignee for unloading, forwarding instructions, or for any other purpose, under the terms of the tariff, or any allegation showing that Woodlane Yard was, at the instance or request of the shipper, substituted as a point of destination or delivery for Port Richmond, the mere allegation that it was held for the consignee leaves too much to implication and conjecture to bring the consignee's part in the detention within the terms of the tariff set out in the indictment.

An indictment is to be construed fortius contra proferentem. The language must necessarily import the offense charged, and, if susceptible of a different interpretation, it is bad. Every fact necessary to constitute the crime charged must be directly and positively alleged, and nothing can be charged by implication or intendment. United States v. Britton, 107 U. S. 655, 2 Sup. Ct. 512, 27 L. Ed. 520.

The allegation in indictment No. 19 that, by the device of detaining the car at Woodlane Yard and not assessing or collecting demurrage for such detention, the defendant granted a concession to the consignee, does not help the insufficient statement of the offense. If the pleader intended to allege a detention at Woodlane Yard, eight miles from the terminus of the transportation, as a device by which the consignee

would, under some arrangement with the carrier, be relieved of terminal demurrage charges, which would have accrued by reason of detention in case the transportation to the terminal point had been completed, there should have been an allegation of such fact. Facts, however, which are not set out with clearness and particularity, cannot be supplied by implication, when essential to a statement of the facts and circumstances constituting the offense.

Under indictment 20, the defendant is charged with having failed to strictly observe the tariff. It is difficult to perceive how such a charge can be sustained by the allegation of failure to make and collect terminal demurrage charges, when such charges could not have accrued under a strict observance of the tariff. There is nothing alleged in the indictment to show any obligation on the part of the shipper or consignee to pay anything but terminal demurrage charges, and the facts set out establish to the contrary a detention in transit without the allegation of any condition of the shipping or billing or any act upon the part of the consignee under which a demurrage charge would lawfully accrue.

[2] It was argued on the part of the government that the allegation that notice of arrival of the car was sent by the defendant to the consignee from Port Richmond is sufficient to sustain the charge that demurrage had accrued, because demurrage charges begin to run upon notice of arrival. Notice of arrival is merely effective in fixing the time when the liability to the charges accrue, but notice of arrival is immaterial unless the car has actually arrived at a point where the tariff fixes liability for detention, and it cannot be seriously considered as fixing liability for a detention not contemplated by the tariff.

The principles involved have been repeatedly ruled upon by the Interstate Commerce Commission, and the language of Commissioner Knapp in the case of United States v. Denver & Rio Grande R. Co., 18 Interst. Com. Com'n 7, is particularly applicable to this case:

"Demurrage does not ordinarily accrue except upon delivery of cars at the point specified in the bill of lading, and, where charges are imposed for detention of cars at a point other than that so specified, there must be definite tariff authority therefor."

See, also, rulings by the Interstate Commerce Commission cited by the defendant in Munroe & Sons v. Michigan Central R. R., 17 Interst. Com. Com'n 27; Tioga Coal Co. v. Chicago, Rock Island & Pacific Ry., 18 Interst. Com. Com'n 414; Crescent Coal & Mining Co. v. B. & O. R. Co., 20 Interst. Com. Com'n 559; Coomes & McGraw v. Railway, 13 Interst. Com. Com'n 192; New York Hay Exchange Ass'n v. Railroad, 14 Interst. Com. Com'n 178; Porter v. Railroad, 15 Interst. Com. Com'n 1; American Creosoting Works v. Illinois Central R. R., 15 Interst. Com. Com'n 160; Rossie Iron Ore Co. v. Railroad, 17 Interst. Com. Com'n 392.

It is apparent that the indictments do not set out the accrument of lawful demurrage charges under the tariff in question, and therefore do not sufficiently charge the offense of granting concessions as to such charges, nor of failure to strictly observe the tariff.

The demurrers are sustained.