### DAVIDSON et al. v. UNITED STATES.
### No. 9446.

Circuit Court of Appeals, Eighth Circuit.
Sept. 20, 1932.

Mo., the defendants did "wilfully, unlawfully, knowingly and feloniously receive, conceal and store one Buick sedan, motor No. 2,649,000, which had theretofore been stolen at Hominy, Oklahoma, on the 23rd day of March, 1931, and transported in interstate commerce from Tulsa, Oklahoma, to Kansas City, Jackson County, Missouri, and the said Fred A. Davidson, Ed Brummell, Tommie F. Gillette, Cecil J. Latimer and John Weber, well knowing at the time of said receiving, concealing and storing, that the Buick sedan, Motor No. 2,649,000, as aforesaid, had been theretofore stolen; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the United States of America."

Davidson and Brummell were found guilty on the first and third counts. Weber was found guilty on the first and second counts. Gillette was found guilty on the third count and there was a disagreement on count 1. Latimer was found guilty on all three counts. Appeals of Gillette and Latimer have been dismissed, leaving before the court at this time only the appeals of Davidson, Brummell, and Weber.

Fred A. Davidson and Ed Brummell were respectively constable and deputy constable of Brooking township, Jackson county, Mo. Brummell operated a filling station, and Davidson was engaged in the dairy business. Gillette was employed as an automobile salesman by a motor company at Kansas City. Weber was by trade an auto mechanic. Latimer had, at one time, worked at the Ford Plant in Kansas City, and had known Gillette since 1925. The evidence indicates, and there is no testimony to the contrary, that of all the defendants on trial, Davidson knew only Brummell, and that Brummell knew only Davidson and Gillette. Gillette was acquainted only with Latimer and Brummell, while Weber knew Latimer, but he had never met Davidson, Brummell, or Gillette before his arrest. Latimer was acquainted only with Gillette and Weber.

The automobile in question was stolen from an Indian girl, Mary White Horn, on March 23, 1931. She was driving her father's car on the streets in Hominy, Okl., at 10:30 p. m., when a dark-blue Chevrolet sedan forced her to the curb. There were four men in the sedan. Two got out of the sedan, and at the point of revolvers, forced the girl to abandon her car. The two then got into her car and drove away, the other two driving away in the Chevrolet sedan. The Indian girl did not identify any of the defendants on

William G. Lynch, of Kansas City, Mo. (Horace Guffin, of Kansas City, Mo., on the brief), for appellants Davidson and Brummell.

Bert W. Sheets, of Kansas City, Mo., for appellant Weber.

A. B. Lovan, Asst. U. S. Atty., of Kansas City, Mo. (William L. Vandeventer, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

NORDBYE, District Judge.

The appellants, Davidson, Brummell, and Weber (hereinafter called defendants), were indicted with two other individuals, Gillette and Latimer. The first count of the indictment charges a conspiracy to violate the National Motor Vehicle Theft Act (18 USCA § 408). The second count charges that on or about March 31, 1931, the defendants transported in interstate commerce from Tulsa, Okl., to Kansas City, Mo., a certain stolen motor vehicle. The third count charges that on or about April 1, 1931, at Kansas City,

trial as being any one of the persons connected with the theft of her car. About April 6, 1931, the stolen car was found in Kansas City, Mo., in possession of one Jones. The defendants Davidson and Brummell had sold the car to one Bordy, and Bordy sold it to Jones. The testimony for the government indicates that the car was a five-passenger Buick sedan, reasonably worth $1,200. Davidson and Brummell sold it to Bordy for $700. The purchaser gave Davidson a check for $700 in payment of the car. Before the check was cashed, it was ascertained by the purchaser that the car was stolen at Hominy, Okl., and payment on the check was stopped, and when Davidson and Brummell came to the purchaser's place of business to learn why payment had been stopped on the check, they were arrested. When questioned by the arresting officers as to the sale of this car, they told the officers that in the performance of their duties as constable, this car was picked up on the highway in early January, 1931, and that it had been stored for some ninety days in a garage at Raytown, which was located in the township of which Davidson was constable. These two defendants told the officers that storage charges which had accrued on the car amounted to $120, and that a justice of peace in that township issued an execution against the car and that the sale made by them was in pursuance thereto. It was disclosed by the evidence that when the car was sold, Davidson executed a paper which purported to be a constable's bill of sale on an execution issued by the justice of peace on account of storage charges. This instrument was signed by Davidson as constable, and was turned over to the purchaser so that the latter would be able to get title to the car.

An investigation by arresting officers indicated that the story told by Davidson and Brummell was false—that the garage in which these defendants stated the car had been in storage since January, 1931, had not been in existence that long—and later Davidson and Brummell admitted that their story was fabricated, and then offered to disclose to the officers their entire connection with this car.. They informed the officers that the car was first brought to Brummell, who conducted a filling station, by one Tommie Gillette, a few days before the car was sold; that Brummell had made arrangements with Gillette to sell the car for him and to receive a commission for so doing. Gillette was then questioned by the officers. He first denied knowing anything about the car, but later stated that he had received the car from Cecil J.

Latimer, and that he (Gillette) had taken the car to Brummell. Gillette contended that he was authorized by Latimer to sell the car, but in that he (Gillette) was employed by an automobile agency, it was not feasible for him to dispose of the car at the place of business where he was employed, and consequently, had contacted with Brummell as a prospective purchaser, and then had made arrangements that Brummell should endeavor to find someone who would purchase the car. Latimer was then questioned, and after first denying any knowledge of the car in question, and denying that he had ever been in Oklahoma, admitted that he had come into possession of this car through one John Weber; that Weber had informed him that he had a "hot" car in Oklahoma which had been taken away from an Indian and that he (Latimer) went with Weber to Oklahoma in Weber's car, and that he drove the stolen car from Oklahoma to Kansas City, and that Weber came back from Oklahoma in his own car. Weber was then arrested, and after stoutly denying any knowledge of the stolen car, when confronted with the information given by the other co-defendants, admitted that he had told Latimer that he had a "hot" car in Oklahoma and that he requested Latimer to go with him to Oklahoma to drive the car back to Kansas City.

All the defendants testified in their own behalf at the trial. Both Weber and Latimer testified that prior to the making of the trip to Oklahoma, they met a man by the name of Kirk, who told them about a car that he had in a garage in Tulsa, Okl., and that Kirk had asked Latimer and Weber to go with him to Oklahoma and to get the car and dispose of it, and that any sum realized over and above $650 could be retained as a commission. Kirk was not at the trial, and his existence depends entirely upon the truthfulness of Weber and Latimer. Both Weber and Latimer denied that they had participated in the stealing of this car, and contended that they did not know the car had been stolen. They also denied that they had informed the officers that they knew that this was a "hot" car. Weber contended that he merely took Latimer and Kirk in his car to Tulsa and never saw the car that Kirk and Latimer took back to Missouri. He also contended that his only purpose in going to Oklahoma was to obtain some automobile tools to enable him to go to work with a motor company with whom he had obtained employment. It was his testimony that although Kirk and Latimer rode with him to Tulsa, he (Weber) drove back to Kansas City alone in his own Chevrolet car. Latimer stat-

ed that he and Kirk drove the car back from Tulsa, and then the car was left with Latimer and he stored it in a garage at 1812 Independence avenue, Kansas City. Latimer contended that the car was stored there at the instance of Kirk. Apparently, the car had Oklahoma license tags on it at the time that Latimer drove it from Tulsa. Gillette testified that during the first days in April, 1931, Latimer came to the motor company where he was employed and told him that he had a car that he would like to sell, and informed Gillette that the car was in a garage on Independence avenue, Kansas City. Gillette denied that he had any knowledge or information that the car had been stolen, and he contended that he called up Brummell and told him that he had a Buick sedan for sale and asked Brummell if he could use it. Gillette contends that later on he went down to Brummell's filling station, and that Brummell, after examining the car, concluded that he would not be able to purchase it himself, but made arrangements with Gillette to find a purchaser, and to obtain a commission for so doing. Gillette then contended that he became ill and was not available, and Brummell proceeded to find a purchaser. He called upon Davidson to assist him. When a purchaser was found, it is contended by Brummell and Davidson, that on account of Gillette's illness, they were unable to close the deal, in that title could not be given. Both Brummell and Davidson contended that the purchaser was insistent that the deal go through at once, and stated that he would withdraw from the transaction unless it was closed on that day. Brummell and Davidson contended that in order to expedite the transaction, they were prevailed upon to give constable's bill of sale at the suggestion of the purchaser, who was only concerned with getting title. Bordy, the purchaser, however, denied that he had suggested the use of a constable's bill of sale. He testified that Davidson and Brummell informed him that the car had been picked up on the highway and was being sold for storage charges.

Of course, it is apparent that Davidson and Brummell knew that they were handling a so-called "hot" car, and that they adopted this plan of issuing a constable's bill of sale in order to obtain apparent title in the hands of the purchaser. The conclusion is irresistible that both Davidson and Brummell prostituted their official position as officers in furtherance of a scheme to dispose of a car that they knew to be stolen.

█ The evidence fairly establishes that the car was stolen at Hominy, Okl., on March 23, 1931. Some days later it was transported to Kansas City, Mo., by Latimer and Weber as a result of a conspiracy; but there is an utter absence of any testimony that Davidson and Brummell were parties to any conspiracy as alleged in the first count of this indictment. The fact that in selling this car Davidson and Brummell aided the conspirators is not sufficient. It is necessary that there be proof of an unlawful agreement, either express or implied. True, proof of overt acts is sometimes sufficient to prove a conspiracy, but the overt act or acts must be clearly referable to an unlawful conspiracy or agreement, and as far as the acts of these two defendants are concerned, they are as consistent of their innocence of the charge of conspiracy as their guilt. There is no evidence that indicates any participation on their part with knowledge of the conspiracy.

█ The only codefendants known by Brummell were Davidson and Gillette. Davidson knew only Brummell. As far as the testimony disclosed, the first time Davidson and Brummell saw this car, or knew of its existence, was after Gillette had removed it from the garage at 1812 Independence avenue, Kansas City. One may suspect or conjecture that Davidson and Brummell were acting as "fences" for stolen cars transported in interstate commerce in pursuance to some conspiracy, but the evidence will not justify such a conclusion. The evidence would warrant the view that these defendants, Davidson and Brummell, conspired with Gillette to sell a stolen car, but that conspiracy is not the one charged in the indictment. There is no evidence nor any circumstance whatsoever which even remotely indicates that these two defendants had any knowledge that this was an interstate car, or that Gillette was engaged in transporting a car or cars in interstate commerce. The most that can be claimed from the evidence is that Davidson and Brummell are proven to have been the receivers and sellers of a stolen automobile delivered to them by Gillette. There is no evidence which indicates that they had any connection with the original theft of this car, nor with the transportation of it, nor, indeed, with the storage of it when it was first received at Kansas City. The subterfuge employed by these defendants in disposing of this car by issuing a constable's bill of sale, and the false statements made to the officers with reference to the matter, strongly infer that they knew

that they were handling a stolen car; but such circumstances cannot supplant the absence of testimony or circumstance connecting these defendants with the conspiracy charged in this indictment. If this verdict on the first count charging conspiracy is to be sustained, it must not only appear that the car in question constituted interstate commerce, but also that these defendants, when they received the car, had knowledge of the interstate character of the transaction. In other words, it must appear that they knew where this car came from, in order to warrant a conclusion that by receiving and selling the car, they participated in the furtherance of a conspiracy as alleged in count 1 of this indictment. The only possible theory upon which Davidson and Brummell could be connected with any conspiracy, would be to infer from the evidence that they became a part of such conspiracy after it was formed.

■ The following language of the court in Dickerson v. United States (C. C. A.) 18 F. (2d) 887, 893, is appropriate:

"To warrant a conviction for conspiracy to violate a criminal statute, the evidence must disclose something further than participating in the offense which is the object of the conspiracy; there must be proof of the unlawful agreement, either express or implied, and participation with knowledge of the agreement. Linde v. U. S., 13 F.(2d) 59 (8th Cir.); U. S. v. Heitler et al. (D. C.) 274 F. 401; Stubbs v. U. S. (C. C. A. 9th Cir.) 249 F. 571, 161 C. C. A. 497; Bell v. U. S. (C. C. A. 8th Cir.) 2 F.(2d) 543; Allen v. U. S. (C. C. A.) 4 F.(2d) 688; U. S. v. Cole (D. C.) 153 F. 801, 804; Lucadamo v. U. S. (C. C. A.) 280 F. 653, 657.

"The mere fact that the plaintiffs in error purchased liquor from the conspirators is not sufficient to establish their guilt as conspirators. The purchaser may be perfectly innocent of any participation in the conspiracy. The gist of the offense is the conspiracy, which is not to be confused with the acts done to effect the object of the conspiracy. Iponmatsu Ukichi v. U. S. (C. C. A.) 281 F. 525."

In Linde v. United States, supra, this court said: "A careful consideration of the entire record convinces us that it fails to disclose any further connection with the scheme, although the existence of such a scheme and plan is abundantly established, than the receipt of a car by each of these defendants for personal use, and without proof of knowledge of the interstate character of the transaction. There are a number of circumstances which would lead to the suspicion that both Linde

and Brown knew that the cars sold or traded to them were stolen cars, but it does not appear that they knew whence they came, or were to come, nor that they were parties to any general plan or conspiracy having as its object the introduction of such cars from without the state for purposes of disposition and sale. That they may have had guilty knowledge and participation rests upon suspicion only, arising from their acquaintance and association with some or all of the other conspirators; but to establish a conspiracy to violate a criminal statute the evidence must convince that the defendants did something other than participate in the substantive offense which is the object of the conspiracy."

In the case of Dahly v. United States (C. C. A.) 50 F.(2d) 37, 42, Judge Booth, speaking for the court, stated:

"The overt act or acts, the manner and circumstances under which they are done, may be considered in connection with other evidence in the case as circumstances in determining whether or not there was formed the conspiracy or agreement charged; but it must be established that the conspiracy or agreement which is charged to have existed and which is the gist of the offense had been formed before and was existing at the time of the commission of the overt act or acts.

"Proof of the overt acts may or may not be sufficient to prove the conspiracy. This will depend upon the character of the overt acts; not whether they are criminal per se or not, but whether they are of such character separately or collectively that they are clearly referable to a preagreement or conspiracy of the actors. If the jury is satisfied, beyond a reasonable doubt, from the evidence that such is the character of the overt acts proven, the jury may find the preexistence of the conspiracy. Otherwise, evidence independent of the overt acts is necessary to prove the conspiracy.

"Circumstantial evidence is equally available with direct evidence to prove the conspiracy, but suspicion or conjecture cannot take the place of evidence. Guilt must be established beyond a reasonable doubt, and, where the evidence is as consistent with innocence as with guilt, no conviction can properly be had. Even participation in the offense which is the object of the conspiracy does not necessarily prove the participant guilty of conspiracy. The evidence must convince that the defendant did something other than participate in the offense which is the object of the conspiracy. There must, in addition thereto, be proof of the unlawful

agreement and participation therein, with knowledge of the agreement.

"Presumption cannot be based upon another presumption, but only upon facts. It is not necessary that all of the alleged conspirators should have been such from the beginning of the conspiracy. There may be a subsequent joining; but a person, to be held as subsequently joining a conspiracy, must be shown to have had knowledge of the conspiracy at the time of joining, and to have participated while having such knowledge."

The government contends that recent possession of a stolen car raises a presumption of guilt. Drew v. United States (C. C. A.) 27 F.(2d) 715. Such presumption is of no avail, however, in view of the undisputed evidence in this case. The car was transported from Oklahoma to Missouri by Latimer in accordance with an agreement made between Latimer and Weber. Gillette received the car from Latimer. The defendants Brummell and Davidson never saw the car until it was removed from 1812 Independence avenue, where it was first stored. In view of the evidence upon which the government relies for the conviction of Weber, Latimer, and Gillette, there can be no presumption entertained that Davidson and Brummell transported or received the car while it was in interstate commerce.

• The statute upon which count 3 of the indictment is based reads as follows: "Whoever shall receive, conceal, store, barter, sell, or dispose of any motor vehicle, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be punished. * * *" Section 408, USCA, title 18.

It is, of course, an indispensable ingredient of the offense that the car at the time it was received, concealed, stored, bartered, sold, or disposed of, was "moving as, or was a part of, or constituted interstate commerce." If the car had lost the character of interstate commerce at the time it was received, etc., no offense against the laws of the United States has been proven. There is no testimony in the record that the transporters of this car intended to deliver to these defendants Brummell and Davidson. The mere fact that the car had theretofore been transported in interstate commerce is not sufficient. The act does not purport to exercise jurisdiction over individuals who receive or sell stolen cars after such cars cease to move in or be a part of interstate commerce. Congress would have no constitutional authority to pass this act except for the commerce clause of the Constitution.

We have already determined from the evidence that these two defendants were not guilty of any conspiracy as charged in this indictment. The destination of the transportation of this car, as disclosed by the evidence, was Kansas City. That destination had been reached several days before Gillette brought the car to these two defendants. Now, then, in determining whether or not the evidence sustains the verdict of guilt as to the third count, it, of course, is not necessary to show that these two defendants knew that the car was moving in interstate commerce when it came into their possession; but it is necessary for the government to prove that at the time the car was received by these defendants, that such car was a part of interstate commerce. Receiving a stolen car that had lost its character as interstate commerce constitutes no crime against the laws of the United States. Wolf v. United States (C. C. A.) 36 F.(2d) 450. The government has totally failed to sustain this burden of proof, and there is no testimony or circumstances in the record that would support a finding that this car was in interstate commerce at the time it was received by these two defendants. In fact, without some testimony indicating that the destination of this car was Brummell and Davidson, it is entirely consistent with the evidence that the interstate character of this car ceased when it was stored in the garage by Gillette at 1812 Independence avenue, Kansas City.

Furthermore, it will be observed that these two defendants in this third count are charged with willfully, unlawfully, knowingly, and feloniously receiving, concealing, and storing one Buick sedan motorcar "which had theretofore been stolen at Hominy, Oklahoma, on the 23rd day of March, 1931, and transported in interstate commerce from Tulsa, Oklahoma, to Kansas City, Jackson County, Missouri," and that the defendants named "well knowing that the said Buick Sedan, Motor No. 2,649,000, as aforesaid, had been theretofore stolen." There is entirely omitted from the indictment any charge to the effect that the vehicle at the time it is charged to have been received, concealed, and stored, was moving as or was a part of, or that it constituted, interstate or foreign commerce. It is no offense against any federal statute to receive or conceal, or to store a car that has been stolen, nor was it material that at some time the property had been transported in interstate commerce. It is essential to the of-

fense that the property, at the time it is charged that the defendants received or stored it, was moving as, or was a part of, interstate commerce. The third count does not charge any offense against the laws of the United States. The government might prove every element of the crime charged in the third count, and nevertheless no crime against the laws of the United States would have been committed. If the evidence must show that the car was moving in or was a part of or constituted interstate commerce, it follows as a necessary conclusion that the indictment must also charge such facts.

"It is a well settled rule of criminal pleading that every essential fact necessary to constitute the crime sought to be charged, should be alleged directly and positively, and that the omission of such a fact cannot be supplied by implication or intendment. Jones v. U. S., 19 F.(2d) 316, 317 (C. C. A. 8); Pettibone v. U. S., 148 U. S. 197, 202, 13 S. Ct. 542, 37 L. Ed. 419; Bartlett v. U. S. (C. C. A. 9) 106 F. 884, 885; Brenner v. U. S. (C. C. A. 2) 287 F. 636, 639; U. S. v. Philadelphia & R. Ry. Co. (D. C. Pa.) 232 F. 953, 955; U. S. v. Louisville & N. R. Co. (D. C. Ky.) 165 F. 936, 938; 31 C. J. p. 659, § 179."

In Grimsley v. United States (C. C. A.) 50 F.(2d) 509, this question was before the court, and in the course of the opinion it is said:

"It is an essential element of the offense under the fourth section that the accused receive the motor vehicle while it is moving as, or is a part of, or constitutes, interstate or foreign commerce. The act, as is apparent on the face of it, is based upon the commerce clause of the Constitution, and does not assume to punish one who receives or sells a stolen motor vehicle after it has ceased to move in, or be a part of, interstate or foreign commerce. Brooks v. U. S., 267 U. S. 432, 45 S. Ct. 345, 69 L. Ed. 699, 37 A. L. R. 1407. This essential element was not alleged in the indictments under consideration.

"It is true that each appellant was charged with knowledge that the automobile which it was alleged he received and sold had been previously transported in interstate commerce; but for all that appears in either indictment, such transportation had come to an end and the automobile had come to rest in Florida long before the accused received or sold it."

It cannot be said that the defect is one of form and not of substance. Manifestly, if this car was not in interstate commerce when received, the federal court has no jurisdiction, and the very language employed in the indictment negatives any inference that the car was a part of interstate commerce at the time it was received and stored.

The defendant Weber was found not guilty of the third count in the indictment, hence the sufficiency thereof is not material as to his appeal. He was found guilty of the conspiracy charge and of the transportation. The admissions that he is alleged to have made to the arresting officers would amply justify the jury in believing that he had this stolen car in Tulsa, and that he went down there with Latimer with the express purpose of getting the car transported to Missouri. The jury would be justified in assuming that Kirk was a fictitious person. While Weber may not have personally transported this car, he did arrange with Latimer for its transportation and he admitted to the officers that he knew it was a stolen car. All the surrounding facts and circumstances, together with the admissions made by Weber, and his overt acts in furtherance of the conspiracy alleged in the indictment, fully warranted the jury in believing that there was an agreement, either express or implied, between the defendants Weber and Latimer, and that the transportation of this car was done in furtherance of such conspiracy. The government is not required to prove all the overt acts charged in the indictment alleging conspiracy. Overt acts 2 and 3, as alleged in the indictment, are probably defective for the same reason as count 3. However, there is no question as to the sufficiency of the charge set forth in overt act 1, and in view of the sufficiency of the evidence supporting the conspiracy, we are of the opinion that the verdict of the jury as to the defendant Weber, in finding him guilty of conspiracy, and count 2 which alleges the transportation of this car, is adequately supported by the evidence and should not be disturbed.

Therefore, in accordance with the views expressed in this opinion, the judgment of the trial court is reversed as to the defendants Davidson and Brummell, and affirmed as to the defendant Weber.