**UNITED STATES of America,**
**Appellee,**

v.

**Wendall Dale BRADY, Appellant.**

**No. 19839.**

United States Court of Appeals,
Eighth Circuit.

May 13, 1970.

---

3. As indicated by the court below, the victim testified that her assailant told her that he used a protective device. The negative reports were thus not dispositive of the veracity of her charge.

Maxim N. Bach, of the Legal Aid and Defender Society of Greater Kansas City, Kansas City, Mo., for appellant.

Charles E. French, Asst. U. S. Atty., Kansas City, Mo., for appellee; Calvin K. Hamilton, U. S. Atty., and Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., on brief.

Before MEHAFFY, HEANEY and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

Wendall Dale Brady was convicted of concealing a motor vehicle, knowing it to have been stolen, which was moving as or was a part of interstate commerce, in

violation of § 2313, 18 U.S.C.A.[1] He received a four-year sentence. From his conviction, Brady brings this in forma pauperis appeal challenging the sufficiency of the government's evidence.

To *obtain a conviction under §* 2313, the government must prove that: (1) the motor vehicle involved was stolen; (2) the defendant knew that the motor vehicle had been stolen; (3) the defendant concealed the motor vehicle; (4) the *motor* vehicle involved was moving as or was a part of interstate traffic at the time of the defendant's activities.[2] Evidence was presented as to each essential element of the crime, the jury was properly instructed with respect to each element and found against the defendant on each element.

Brady does not challenge the fact that the vehicle, a 1967 Cadillac El Dorado, was stolen. The evidence was undisputed that the vehicle in question had been taken *without consent from the Dick* Price Motor Company in Wichita, Kansas, sometime during the night of October 8, 1968.

The evidence was also sufficient to support a determination by the jury that Brady knew the car was stolen. His admitted possession of the car within fifteen days after it was stolen, unless satisfactorily explained, was a circumstance from which the jury could infer that he knew the vehicle had been stolen. Teel v. United States, 407 F.2d 604 (8th Cir. 1969); Sewell v. United States, 406 F.2d 1289 (8th Cir. 1969); Aron v. United States, 382 F.2d 965 (8th Cir. 1967). Furthermore, there was substantial evidence indicating that Brady knew the car had been stolen. (1) He used two sets of improper license plates on the car. (2) He twice attempted to flee from the police when he was stopped and questioned about his ownership of the car. On the second occasion, he abandoned the car while it was still in motion, resulting in it being wrecked. (3) He paid Hollis, the alleged seller,[3] $1,200 and took possession of the car without receiving appropriate title papers. (4) He obtained a bill of sale and an installment contract from Hollis on November 28, 1968. These instruments purported to show that Hollis had acquired the car on September 1, 1968, from Broadway Motors of 2849 Broadway, St. Louis, Missouri, and that Richard R. "Perry" had signed the installment contract. The parties stipulated at trial that the company and the salesman were nonexistent. While the same stipulation stated that Brady was unaware of these facts when he made the original purchase, the evidence taken as a whole was such as to justify a contrary inference.

Brady suggests that the evidence indicating that he knew the vehicle had been stolen was rebutted by the government's introduction of the bill of sale

1. Brady was found not guilty of transporting a stolen motor vehicle in interstate commerce.

2. Powell v. United States, 410 F.2d 710 (5th Cir. 1969); Kramer v. United States, 408 F.2d 837 (8th Cir. 1969).

3. Brady's explanation of his possession of the car revolved around an individual named Larry Hollis. According to Brady, he saw Hollis, a casual acquaintance of his, in a Kansas City night club on the night of October 7. When Brady mentioned he was in the market for a car, Hollis stated that he had a Cadillac available. Upon leaving the night club about 1:30 A.M., Brady was shown a Cadillac which Brady testified was identical to the one he eventually purchased. Brady alleged that he ultimately got possession of the vehicle involved here on October 21. Brady also contended that from the beginning Hollis had shown him a Missouri registration card for the vehicle. However, Hollis continually refused to give Brady the registration card because he was trying to clear the title. After he was arrested, Brady allegedly went looking for Hollis and obtained the two documents which were introduced at the trial. The F.B.I. was unable to locate Hollis with the information given to them by Brady. An F.B.I. agent testified at trial that Brady had originally described Hollis as a "hustler." However, when Brady testified, he denied making that statement and said he thought Hollis was a car dealer.

and the retail installment contract. He argues that the government, by such action, vouched for their authenticity thus providing a reasonable explanation for his possession. We do not agree. The documents were furnished by Brady to the F.B.I. after this prosecution was begun. The government introduced them as exhibits in the trial for no reason other than to impeach Brady's story of how he came into possession of the stolen car. Several significant errors in the document were pointed out.[4]

■ The concept that the government is bound by the contents of every document that it puts in evidence has been long discredited. Rodgers v. United States, 402 F.2d 830, 833 (9th Cir. 1968); Jerrold Electronics Corp. v. Westcoast Broadcasting Co., Inc., 341 F.2d 653, 666 (9th Cir.), cert. denied, 382 U.S. 817, 86 S.Ct. 42, 15 L.Ed.2d 64 (1965); Snell Isle, Inc. v. Commissioner of Internal Revenue, 90 F.2d 481, 482 (5th Cir.), cert. denied, 302 U.S. 734, 58 S.Ct. 120, 82 L.Ed. 568 (1937). The two questionable documents, along with the accompanying testimony, support the government's case rather than contradict it. The inaccuracies in the documents, along with their hazy origin, tended to discredit Brady's contention that he did not know the car had been stolen. Compare, Rodgers v. United States, *supra* at 833.

■ Brady does not dispute the sufficiency of the evidence tending to show that he had concealed the motor vehicle. Brady was seen on two separate occasions driving the vehicle with different license plates, neither of which belonged on the vehicle. He did offer an explanation for this conduct, but the jury was free to disregard his testimony and obviously did so. See, Babb v. United States, 351 F.2d 863 (8th Cir. 1965); Phillips v. United States, 206 F.2d 923 (10th Cir. 1953); United States v. Guido, 200 F.2d 105 (2nd Cir. 1952).

■ The final question, whether the jury was justified in finding that the vehicle was still in interstate commerce when it came into Brady's possession, is not without difficulty. Brady argues that he purchased the car after it came to rest in Missouri and, thus, he cannot be held to have violated § 2313, even though he knew the car was stolen. See, Davidson v. United States, 61 F.2d 250 (8th Cir. 1932).[5] While there is some support in the record to support Brady's contention that the car had come to rest in Missouri before his purchase of it, the weight of the evidence is to the contrary.

Brady testified that he borrowed $400 to purchase a car on October 2, that he negotiated for the purchase of a white Cadillac from Hollis on the evening of October 7, that he bought a white Cadil-

---

4. The retail installment contract was apparently signed by a Larry C. Hollig rather than Hollis. Secondly, Broadway was consistently spelled Boardway in both documents. Finally, the total sales price called for by this document was almost a thousand dollars less than Brady agreed to pay for the car.

5. In Davidson v. United States, 61 F.2d 250 (8th Cir. 1932), the Court emphasized the necessity of showing that at the time the car was received by the defendants, it was a part of interstate commerce. The facts in *Davidson* indicated that the car had been stolen in Oklahoma, transported into Missouri and then stored in a garage. Subsequently, two of the defendants were brought into the il-

legal activity in order to sell the car. The Court, in reversing the conviction, stated:

"The government has totally failed to sustain this burden of proof, and there is no testimony or circumstances in the record that would support a finding that this car was in interstate commerce at the time it was received by these two defendants. In fact, without some testimony indicating that the destination of this car was Brummell and Davidson, it is entirely consistent with the evidence that the interstate character of this car ceased when it was stored in the garage [in Missouri]. * * *"

*Id.* at 255.

lac bearing Colorado license plates from Hollis on October 21, and that he placed Missouri license plates on the Cadillac immediately after the purchase. On the basis of this testimony and the previously discussed evidence, the jury was justified in finding that Brady not only knew he was purchasing a stolen car but also in finding that Brady's purchase was the final step of a continuous unlawful scheme of theft and interstate transportation. See, Powell v. United States, 410 F.2d 710 (5th Cir. 1969); Schwachter v. United States, 237 F.2d 640 (6th Cir. 1956). See also, Babb v. United States, *supra*.

Brady testified, as did one of his witnesses, that he was shown a Missouri title to the car. However, all that was ever produced in court was a retail installment contract which was shown to be totally false. The jury was free to disbelieve Brady's entire story and to find that Brady had purchased and concealed the car before it came to rest in Missouri.

Affirmed.