## FILIPPELLI v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 25, 1925.)

No. 4368.

1. Jury ☞131(13) — Permitting prosecuting attorney on voir dire examination to criticize juror for verdict in prior case held error.

Permitting prosecuting attorney on voir dire examination to criticize juror who had served on panel in similar trial in which defendant had been acquitted, and subsequent dismissal for.cause of such juror, held, error, as tending to affect remaining jurors' free exercise of their judgment.

2. Intoxicating liquors ☞249 — Issuance of second warrant, pursuant to affidavit alleging sale prior to date of issuance of first warrant, held improper. .

Where warrant to search premises was issued and executed on October 25th, pursuant to affidavit alleging a sale on October 9th, held, issuance of second warrant on November 5th, pursuant to affidavit charging sale of wine on October 17th, prior to issuance of first warrant, was unwarranted.

3. Intoxicating liquors ☞227—Cross-examination of character witness held proper.

Cross-examination of character witness as to whether he had ever heard of defendants being arrested for violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) held, not error.

**4. Criminal law ⬅️706—Manner of cross-examination of character witness held improper.**

Cross-examination of character witness, as to whether he had heard defendant had been arrested frequently for violations of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), *held* erroneous, as placing before jury matter which government would not be permitted to prove.

**5. Intoxicating liquors ⬅️139—Instruction as to right to possess intoxicating liquor in residence for personal uses held properly denied.**

Requested instruction as to defendant's right to possess intoxicating liquor in private residence for personal use *held* properly refused, as assuming that liquor unlawfully manufactured or acquired might be so lawfully possessed.

**6. Intoxicating liquors ⬅️236(7)—Possession of intoxicating liquor illegally acquired is prima facie evidence that it is kept for sale.**

Possession of intoxicating liquor illegally acquired is prima facie evidence that it is kept for sale, in view of National Prohibition Act, tit. 2, § 33 (Comp. St. Ann. Supp. 1923, § 10138½t).

**7. Intoxicating liquors ⬅️239(4)—Instruction that it was unlawful to possess any article designed for the manufacture of intoxicating liquor held erroneous, as omitting element of intent.**

Instruction that it was unlawful to possess any article designed for manufacture of alcohol or intoxicating liquor *held* erroneous, under National Prohibition Act, tit. 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m), as omitting element of intent.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; John S. Partridge, Judge.

Giovanni Filippelli was convicted of violating the National Prohibition Act, and he brings error. Reversed, and new trial granted.

October 25, 1923, one of the United States commissioners issued a search warrant authorizing a search of the first apartment to right of entrance to No. 348 Francisco street, San Francisco, Cal., entire premises, etc. The warrant issued pursuant to an affidavit of the same date as the warrant, charging a sale of jackass brandy on the premises on October 9, 1923. This warrant was executed and returned on October 25, the date of its issuance. On November 5, 1923, the same commissioner issued a search warrant authorizing the search of the same premises by the same officers. The second warrant was based on an affidavit of the same date as the warrant, charging a sale of wine on the premises October 17, 1923. The second warrant was executed on November 10, 1923, and upon a search thereunder a still, or parts of

a still, and a considerable quantity of intoxicating liquors, were seized.

An information was thereafter filed against the defendant, charging the unlawful possession of property designed for the manufacture of intoxicating liquor, the unlawful possession of intoxicating liquor, the maintenance of a common nuisance, and the sale of intoxicating liquor. Before the trial a motion for a return of the property seized under the search warrants was interposed by the plaintiff in error, on the ground of the invalidity of the warrants, and especially upon the ground that the second warrant was illegal, and the search and seizure thereunder unauthorized. The motion was denied, and the property seized under both warrants was admitted in evidence at the trial, over objection and exception.

On the voir dire examination, it appeared that a number of jurors on the panel had just served in the same capacity, in the same court, on the trial of a case of like character, and had returned a verdict of not guilty. In the course of his examination of the jurors, the assistant United States attorney was permitted to propound such questions as the following, to a juror in the former case, in reference to that trial and the verdict therein: "In that case there was evidence coming from a government witness, which government witness was absolutely unimpeached, to the effect he bought liquor from both of the defendants. There was evidence that search warrants were obtained based upon those purchases of liquor, that the premises were searched, and in both instances liquor found in the possession of the defendants. What more testimony do you require to prove a prohibition case than that?"

After other questions of like import, the court propounded the following: "Do you mean by that, if you were instructed with regard to the proper weight to be given to the testimony of a defendant, do you mean you would arbitrarily accept the testimony of the prohibition officer as against the defendant, or that you would weigh the two in connection with other facts in the case, and the demeanor of the two men on the witness stand; which do you mean?"

The juror answered: "I say I would weigh the two of them very carefully, and I would decide in accordance with my best judgment. I certainly would follow any instructions which your honor would give in the matter, unbiased or unprejudiced. I think, if your honor please, in this case this morning there were witnesses on both sides;

it was a question which was very much in doubt. I was very much interested, in having listened to that case, to have your honor decide, and know what your decision was."

The court replied that the situation did not permit it to do that, but the challenge was allowed, and the juror excused.

On cross-examination of a character witness produced by the plaintiff in error, the assistant United States attorney propounded such questions as these:

"Did you ever hear of his being arrested at the corner of Montgomery and Washington streets, for a violation of the Prohibition Act?"

"If you had heard he had been arrested frequently for the violation of the National Prohibition Act, while operating a saloon at the corner of Montgomery and Washington streets since the Prohibition Act went into effect, you would not think his reputation was good?"

And in the course of his argument to the jury the same counsel said: "In the past two or three years, in all of the very many cases handled or tried, there has been either a plea of guilty or conviction, except in two or three cases."

Counsel for plaintiff in error here interposed an objection, and counsel for the government proceeded: "I want to make the point, gentlemen, subject to the ruling of the court, that in all of the many cases the charge of frame-up has not been sustained, and the charge has not been made more than once or twice. It is apparent there could be no charge of frame-up where pleas of guilty are entered, or where the defendants have pleaded guilty, or where the defendants have been convicted."

Again counsel for the plaintiff in error insisted upon his objection, but the court replied that it did not consider it very harmful; but, if so, the jury was instructed not to consider any other case, or any number of cases. And again counsel for the government said: "I don't say what happened in the other cases affects the guilt or innocence of the defendant at all. I merely mention it on the side, you might say. This is to me an ordinary prohibition case; and I would say a very, very good one. You should have no sympathy with a man who is spreading poisonous liquor among his fellow men." An objection interposed to this latter statement was overruled by the court.

At the close of the trial the plaintiff in error requested an instruction to the effect that it was not unlawful for a person to possess liquor in his private dwelling, while occupied as a dwelling only, and that such liquor need not be reported, provided that such liquor is for his own use and the use of members of his family and his bona fide guests, when entertained by him; also a further request that the defendant was not guilty of violating the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) unless the jury found from the evidence that the still, or part of a still, was designed and intended to be used by the defendant in the unlawful manufacture of intoxicating liquor. This request was refused, and the court instructed the jury to the contrary.

After the jury had retired to consider of their verdict, they returned into court and requested further instructions as to count 3 of the information, which was the common nuisance count. The court caused the instructions already given to be read to the jury and added: "I may add to that, which I did not add this morning: The possession of liquor illegally acquired is prima facie evidence it is kept for sale." To this instruction the plaintiff in error excepted, and requested the court, in this connection, to define what was meant by prima facie evidence, tendering a proper instruction in that regard. This latter instruction the court refused to give. The record contains other charges of misconduct, and other assignments of error, but they call for no special consideration.

Edward A. O'Dea, of San Francisco, Cal., for plaintiff in error.

Sterling Carr, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge (after stating the facts as above). [1] We will now take up the different assignments of error in the order in which they are discussed in the briefs. In our opinion, it was error on the part of the trial court to permit the attorney for the government to criticize a juror and impugn his motives, in the presence of other jurors, because of his verdict in another case, under the pretense of inquiring into the state of his mind, and to follow this up by excusing the juror for cause. Of course, no error can be predicated on the ruling sustaining a challenge for cause; but it none the less appears from the record that the verdict in the former case was the sole basis for the challenge. Somewhat similar

situations arose in the following cases: Wolf v. United States (C. C. A.) 292 F. 673; Hindman v. United States (C. C. A.) 292 F. 679; Boyles v. United States (C. C. A.) 295 F. 126; McLendon v. United States (C. C. A.) 2 F.(2d) 660.

The facts in the Wolf Case are thus stated in a footnote to the opinion: "The gist of the asserted Mahannah incident is that, the court having learned by its own inquiry that the jury stood eleven to one for conviction, and Mahannah, in answer to further inquiry, having said he had favored acquittal, was immediately dismissed from the panel and from further jury service." In discussing the incident the Circuit Court of Appeals for the Sixth Circuit said:

"The court had a perfect right to discharge the juror Mahannah, if thought to be an unfit juror; but the discharge should not be made in such way as to indicate that it was a rebuke for failure to convict. It does not appear by proof whether such dismissal was publicly had and in open court, and under such circumstances as naturally to indicate to the jurors in attendance that the discharge was made merely because the juror voted for acquittal in a case where the verdict depended upon the credit to be given the testimony of the respective witnesses. If the discharge was so made, and in the presence or within the presumed knowledge of jurors upon the panel which tried plaintiff in error, its effect upon the whole panel would plainly have been such that no other case involving the issue of Taylor's credibility ought to have been tried by that panel."

The Wolf, Hindman, and Boyles Cases all grew out of the same transactions and involved substantially the same parties, but not so in the McLendon Case. In the latter case the court said:

"There must be a new trial; but there is another matter of great importance, and which alone would require reversal. After the case had been on trial several days, illness and death came to the family of a juror, and without objection this case was held over four or five days, and the 11 jurors in this case participated as they were called as jurors in the trial of other cases. No objection was made at the time to this course; but, after this jury had reconvened, and the trial had been finished and the jury charged, it remained out for parts of two days, and came back into court two or three times for further instructions. During this time a jury which had been trying a case for the unlawful sale of liquor reported that it was unable to agree. That jury had been instructed that upon the testimony of the defendant himself given in that case he was guilty, and it was their duty to return a verdict of guilty. When the jury reported its disagreement, the judge asked those jurors who were refusing to convict to arise. Six did so. Thereupon they were publicly discharged from the jury panel and the clerk was publicly instructed to see that their names were not drawn upon subsequent juries. This was for the reason, then stated in open court by the judge, that it was their legal duty to decide the case according to the evidence as produced and according to the law as given to them by the judge; that, in refusing to follow the instructions of the judge as to the verdict, these jurors had contumaciously refused to do their plain duty; and that the government ought not to continue to expend its time and money trying cases before jurors who would not be governed by the instructions of the court as to the law. * * *

"In view of what was said in our two former opinions just cited, and the fact that the trial of this case occurred before we had thus expressed disapproval of this practice, we refrain from extended comment. The ever-present possibility that the judge may be in error as to the indisputable effect of the evidence and the inevitable tendency to let the jurors of the panel understand that they will be punished—though not by fine or imprisonment—if they do not agree with the judge as to the tendency of the evidence, must necessitate an immediate discharge of the entire panel whenever such an incident occurs, lest every later case at that term be subject to condemnation as a mistrial."

Here the court itself took no action, but the attorney for the government was permitted to act by its sanction and under its protection. The juror addressed and all other jurors were given plainly to understand that they might be punished, not by fine or imprisonment, it is true, but by public castigation at the hands of the public prosecutor, in the presence of their fellows and of the public under the protection of the court, if their view of the testimony in a given case did not coincide with the views of the court and the public prosecutor.

In this connection it must be remembered that there is a great sameness in the witnesses and testimony in this class of cases. On the one side are government agents; on the other side, the defendant or defendants. In some cases there may be corroboration,

but usually there is none; and if the jurors are to be publicly criticized, with the sanction and under the protection of the court, for returning a verdict of not guilty in one case, how can they expect to escape the like criticism if they return a like verdict in another case of the same general character, even though their conscience tells them that the government has failed in its proof. It is needless to say that, if such a course of conduct is permitted, timid jurors will be influenced, and all jurors will be embarrassed in the discharge of the important public duties imposed upon them by law. The policy of criticizing a jury for their verdict in any case is of doubtful propriety, to say the least. As said by the court in one of the cases just cited, there is always the ever-present possibility that the jury may be right, and that the judge or public prosecutor may be wrong. Both judges and jurors are human; judges as well as jurors make mistakes; if they did not, we would have or know no jury system.

[2] We see no defect of form or substance in the first search warrant, or in the affidavit upon which it was based; but, in our opinion, the second search warrant was unauthorized and illegal. The object of a search warrant under the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a–10496¼v) and the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) is to search for and seize property used as a means for committing a crime, and when that purpose has been accomplished no further search is authorized for causes existing prior to the time of search. The sale of October 9 would justify the issuance of a search warrant to search the private residence of the plaintiff in error, and so would the sale of October 17; but no search warrant was applied for because of the first sale until after the second sale was made and, the two sales would thereafter justify but a single search. After the search was made on October 25, the right of search because of prior sales was exhausted, and the application for a search warrant on November 5, based on the sale of October 17, eight days prior to the first search, was a plain abuse of the process of the court. After the search of October 25, there remained no more apparent right to issue a search warrant based on the sale of October 17 than there was to issue a second warrant based on the sale of October 9.

We do not hold or intimate that a second search warrant may not issue in any case after a prior search of the premises, when based on a sale or sales consummated before the first search; but, to authorize a second search, some showing must be made beyond the mere sale of intoxicating liquor antedating the first search. As already stated, a search warrant is authorized for a specific purpose, not as a punishment for crime, and when that purpose has been accomplished the right of search is gone. Courts must presume, in the absence of some showing to the contrary, that officers perform their duties and properly execute the processes placed in their hands, and the practice of procuring successive search warrants and making repeated searches of private dwellings, based on sales antedating the first search, cannot be sanctioned or tolerated. The petition for the return of the property seized under the second search warrant, unless contraband, should have been granted and all testimony relating thereto should have been excluded.

[3, 4] We see no objection to the first question propounded to the character witness, as the fact that the witness had heard of the arrest of the plaintiff in error might have some bearing upon his general reputation. But the second question was grossly improper, because it assumed that the plaintiff in error had been arrested a number of times for violating the National Prohibition Act. If such were the fact, it was misconduct to call the matter to the attention of the jury, because the government would not be permitted to prove it, and if such were not the fact the misconduct was graver still. In reference to the argument of counsel to the jury, we need only say that most, if not all, the statements excepted to were entirely outside the record, and had no place in a properly conducted trial.

[5] The request to charge the jury that it was not unlawful for the plaintiff in error to possess intoxicating liquor in his private residence, while occupied by him as his private dwelling only, provided such liquor was for the use of the plaintiff in error, his family, and bona fide guests, was properly refused, because the request assumed that liquor unlawfully manufactured or acquired might be lawfully possessed, and such is not the law. True, a party may still possess intoxicating liquor for beverage purposes, notwithstanding the National Prohibition Act; but the law imposes upon him the

burden of proving the legality of his possession, and no such showing was made here.

[6] Nor was it error to instruct the jury that the possession of intoxicating liquor illegally acquired is prima facie evidence that it is kept for sale. Such is the express provision of section 33 of title 2 of the act (Comp. St. Ann. Supp. 1923, § 10138½t). We think, however, that the court should have defined what is meant by prima facie evidence, when a timely request was made therefor, as a general statement that one fact is prima facie evidence of the existence of another conveys very little meaning to the average jury.

[7] Section 25 of title 2 of the National Prohibition Act provides: "It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property." 41 Stat. 315 (Comp. St. Ann. Supp. 1923, § 10138½m).

The court charged the jury as follows: "The language of the statute is that it is unlawful for any one to have in his possession any article designed for the manufacture of alcohol or intoxicating liquor, the alcoholic content of which should be more than one-half of 1 per cent. by volume. If, therefore, you find from the evidence that he did have this article in his possession, and this article was designed for the manufacture of intoxicating liquors of the unlawful content, then it is your duty to find him guilty upon the first charge."

This instruction was excepted to, and a request to give the following instruction was refused: "I charge you that the defendant is not charged with violating the internal revenue laws of the United States, but with violating the National Prohibition Act, and unless you find from the evidence that the still and parts of the still mentioned in the information were designed or intended to be used by the defendant in the unlawful manufacture of intoxicating liquor, you must acquit the defendant of the count setting forth the charge of having property designed for the manufacture of liquor in his possession."

If the statute prohibited the possession of property merely designed for the manufacture of intoxicating liquor, the instruction given by the court would have been proper, for in that event the term "designed" would be descriptive of the property, and would have no relation to the person having the property in his possession, or to his intentions. Commonwealth v. Morse, 2 Mass. 129. But the statute goes further than this. It declares that the property must not only be designed for the manufacture of intoxicating liquor, but that the liquor or property must have been used or be intended for use in violating the National Prohibition Act. The past or intended use of the liquor or property is therefore an essential element of the crime, and that element was entirely omitted from the charge of the court. United States v. Horton (D. C.) 282 F. 731. For this reason the instruction as given was erroneous, and the instruction requested, or one of like import, should have been given. The instruction requested made no reference to the past use of the liquor or property, and was to that extent defective; but the request was sufficient in form to direct the attention of the court to the language of the statute.

Some of the errors discussed in the foregoing opinion may not have been prejudicial, but, taken as a whole, they leave us no alternative but to reverse the judgment and grant a new trial.

It is so ordered.