## HALL v. UNITED STATES.
### No. 13871.

United States Court of Appeals
Eighth Circuit.

June 9, 1950.

Frank J. O'Leary, Kansas City, Mo., for appellant.

Richard H. Musser, Assistant United States Attorney, Kansas City, Mo. (Sam M. Wear, United States Attorney, Kansas City, Mo., was with him on the brief), for appellee.

Before SANBORN, JOHNSEN and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

LeRoy Neeley and Milton Hall were charged, by an indictment, with having, on June 24, 1948, stolen a case of Camel cigarettes from the Missouri Pacific Railroad docks at Kansas City, Missouri, while the cigarettes were moving in interstate commerce as a portion of a shipment from R. J. Reynolds Tobacco Company, Kansas City, Missouri, to Rohlfing & Company, Leavenworth, Kansas. The indictment was based on § 409, Title 18 U.S.C., now § 659, Title 18 U.S.C.A. Both defendants were, on June 24, 1948, employees of the Missouri

9. Alemite Manufacturing Corp. v. Staff, 2 Cir., 42 F.2d 832.

Pacific Railroad Company, working on its docks in Kansas City, Missouri.

Neeley entered a plea of guilty. Hall stood trial and was convicted by a jury. The court had denied his motion for a directed verdict of acquittal. From the judgment and sentence entered upon the verdict, Hall has appealed.

The grounds upon which Hall seeks reversal are: (1) lack of evidence that the case of cigarettes allegedly stolen by him from the railroad docks was from the interstate shipment referred to in the indictment; (2) the failure of the court to direct the jury to disregard an improper remark of the prosecutor made during the cross-examination of one of Hall's character witnesses; and (3) the instruction of the court that Hall's certificate of Honorable Discharge from the Army, which had been received in evidence without objection, had no probative force.

█ It is not a federal offense to steal a case of Camel cigarettes from the Missouri Pacific Railroad docks in Kansas City, Missouri, unless the theft is from a shipment moving in interstate commerce. It was therefore incumbent upon the Government to prove not only that Hall stole or participated in the stealing of a case of Camel cigarettes from the docks, but that the case stolen was from the interstate shipment specified in the indictment.

The evidence of the Government established that, at about four or five o'clock in the afternoon of June 24, 1948, there was delivered at the railroad docks in Kansas City a shipment of 15 cases of Camel cigarettes consigned by R. J. Reynolds Tobacco Company to Rohlfing & Company, Leavenworth, Kansas; that the carrier received and accepted this shipment; that in transferring the shipment to a platform truck, the railroad checker found that one of the cases "was partly open at the tip"; that he directed that the entire shipment be taken to the Cooper Shop at the docks for repair of the one case; that the shipment came to the Cooper Shop on a truck; that the split seam of the one defective case was mended with white tape, and it was put back on the truck; that the shipment was turned over to Jesse Childs, a "line-up man," whose duty it was to place the truck in position to be hauled by a tractor man to the location on the docks for loading the shipment into the car destined to Leavenworth; that the car, when loaded, was sealed, apparently between 5 and 6 o'clock p. m.; that it arrived in Leavenworth the following morning with seals intact; and that the shipment of cigarettes was then found to be one case short. This evidence was concededly sufficient to support a finding that the missing case of cigarettes had not been loaded into the car at Kansas City.

Two apparently disinterested Government witnesses testified that, at about 5:35 p. m. on June 24, 1948, they saw Neeley hand or throw a case of Camel cigarettes from the dock to Hall, who was on the ground, and who put the case in his automobile, parked nearby, and drove away.

Neeley testified for the Government. On direct examination, his testimony was, in part, as follows:

"Q. Now, referring your recollection to June 24, 1948 what did you and Milton Hall do together that day? A. Well, some cigarettes came open there and so, they were setting there when I went up there to put the stuff down on the floor there, so I seen them there.

"Q. Where were they setting? A. On the jack [platform truck].

"Q. About where from Gate 29? A. Oh, maybe about five feet.

"Q. From Gate 29? A. Yes. So he says to me, he says, 'Something is coming up here. What can we do about it?' I said 'All right.' He said, told me to hand him the carton, so I did."

Neeley also testified that Hall took the case of cigarettes and put it in his car, and a day or two later gave Neeley ten dollars as his share of the proceeds. On cross-examination, Neeley gave the following testimony:

"Q. Now, tell us what he [Hall] said. A. Well, he said he had those cigarettes up there. He said there was some cigarettes up there, and he wanted me to give

them to him, on this jack, and I gave them to him.

"Q. Where was he when he told you that? A. In the freight house.

\* \* \* \* \* \*

"Q. And what did you do? A. Well, I walked up to him—I looked for them and found them.

"Q. What did you find? A. That case of cigarettes.

"Q. Is that all you found? A. That is all.

"Q. Just one case of cigarettes? A. Just one case of cigarettes."

There is no indication in Neeley's testimony that he knew from what shipment the case of cigarettes he handed to Hall was taken, or that the case was broken or taped up, or that it bore any number indicating the car for which it was intended or had any marks showing its destination. Apparently, all that Neeley knew was that he took a case of cigarettes from a truck and handed it to Hall, at Hall's request. Whether the truck contained 15 cases or one case cannot be determined from the record. The other two Government witnesses who testified to the theft said that they saw Neeley hand Hall a case of Camel cigarettes. Neither of them said anything about a broken case or a taped-up case, or furnished any information as to the shipment from which the case was taken.

■ If Camel cigarettes were a rare commodity or if the evidence showed that the only cases of Camel cigarettes on the railroad docks at 5:35 p. m. June 24, 1948, were the 15 cases destined to Leavenworth, an inference that the case stolen by Neeley and Hall was one of those 15 cases would, no doubt, be justified. We think, however, that the Government failed to prove that the cigarettes handed to Hall by Neeley were taken from the interstate shipment in suit. The situation in the instant case is analogous to that which resulted in a reversal in Cox v. United States, 8 Cir., 96 F.2d 41. While the evidence of the Gov-

ernment in the instant case is consistent with the theory that the theft was from the interstate shipment, it is not inconsistent with the theory that the theft was not from that shipment and was a State offense.

■ There is another reason why there must be a retrial of this case, although the point is not specified or argued in the appellant's brief. The court charged the jury as follows: "Now, as to the law of the case. If you shall find and believe from the evidence in this case that the defendant on or about the 24th of June, this year, 1948, willfully and unlawfully, knowingly and feloniously took a case of cigarettes from the station, from the loading docks in Kansas City, Missouri, the loading docks of the Missouri Pacific Railroad Company, then it would be your duty to return a verdict of Guilty in this case. As I have indicated to you, if there should be any doubt in your mind, if you should believe reasonably he did not do it, you should return a verdict for the defendant."

That instruction was obviously erroneous. Counsel for Hall took an exception to it at the trial, and assigned it as error in a motion for a new trial. The instruction was, as a practical matter, fatal to Hall's defense, since the jury could hardly have found from the evidence that Hall had not participated in stealing a case of cigarettes from the railroad docks. This error in the court's instructions is too plain and vital to be overlooked. See Ayers v. United States, 8 Cir., 58 F.2d 607, 609, and cases cited.

The other points relied upon by the appellant need not be discussed. The questions raised by them are unlikely to recur upon a retrial of this case. The opinion of the Supreme Court in Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168, furnishes an adequate guide in dealing with the subject of character evidence.

The judgment appealed from is reversed and the case is remanded for a new trial.