Herman **ROBERSON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 16006.

United States Court of Appeals
Fifth Circuit.

Oct. 24, 1956.

Rehearing Denied Dec. 12, 1956.

Wm. J. Fuller, Jr., Montgomery, Ala., L. Drew Redden, Rogers, Howard & Redden, Birmingham, Ala., for appellant.

Hartwell Davis, U. S. Atty., Robert E. Varner, Asst. U. S. Atty., Montgomery, Ala., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

For violation of the Dyer Act,[1] appellant was convicted on four counts, three of them for receiving[2] a stolen motor vehicle which was moving as interstate commerce, knowing the same to have been stolen, and the last count for so selling such a stolen motor vehicle. The defendant's motion to dismiss, based principally upon the contention that the description of the automobile was too indefinite, was denied.

The Sixth Amendment requires that, "In all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation; * * *." As said in Bartell v. United States, 227 U.S. 427, 431, 33 S.Ct. 383, 384, 57 L.Ed. 583:

> "It is elementary that an indictment, in order to be good under the Federal Constitution and laws, shall advise the accused of the nature and cause of the accusation against him, in order that he may meet the accusation and prepare for his trial, and that, after judgment, he may be able to plead the record and judgment in bar of further prosecution for the same offense."

See also, Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, 480, 40 L.Ed. 606. In passing on the objection that the indictment was in such indefinite terms that the accused could not plead an acquittal or conviction in bar of another prosecution, it must be borne in mind that, upon a plea of former jeopardy, the identity of the offenses may be established by other parts of the record or even by parol evidence.[3] The present indictment contained "a plain, concise and definite written statement of the essential facts constituting the offense charged." Rule 7(c), F.R.Crim.Proc., 18 U.S.C.A.; 18 U.S.C.A. § 2313, footnote (1), *supra*. The descriptions of the motor vehicles contained in the indictment were more definite than that contained in the illustrative form. Rule 58, F.R. Crim.Proc., Appendix of Forms, Form 7.[4] The district court properly denied the motion to dismiss the indictment and each count thereof.

---

1. 18 U.S.C.A. § 2313:
   *"Sale or receipt of stolen vehicles*
   "Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. For example, Count 1 read:
   "On or about March 4, 1953, in the Middle District of Alabama, Herman Roberson received a stolen motor vehicle (to wit, a 1948 Chevrolet automobile) which was moving as interstate commerce, and he then knew said motor vehicle to have been stolen."

3. Dunbar v. United States, 156 U.S. 185, 191, 15 S.Ct. 325, 39 L.Ed. 390; Bartell v. United States, supra, 227 U.S. at page 433, 33 S.Ct. at page 384; 27 Am.Jur., Indictments and Informations, § 58, Note 9.

4. "On or about the ...... day of ......, 19.., in the ............ District of ............, John Doe received and concealed a stolen motor vehicle, which was moving as interstate commerce, and he then knew the motor vehicle to have been stolen."
   See, also, Myles v. United States, 5th Cir., 170 F.2d 443, 445.

■ Nor did the district court commit reversible error in denying the motion for a bill of particulars, and this for two reasons: first, it was filed on the day of trial rather than within ten days after arraignment, as required by Rule 7(f), F.R.Crim.Proc.; and, second, defendant's counsel admitted that the United States Attorney had already furnished to him the motor numbers of the automobiles involved in the prosecution.

■ We have carefully read and studied the entire record and have no doubt that, under the evidence, the motion for judgment of acquittal as to each count was properly denied. As to the last count charging sale of a stolen motor vehicle, the appellant strenuously urges a lack of support for the averment that the vehicle was moving as interstate commerce, because it had come to rest on a used car lot for approximately six weeks prior to its sale.[5] The evidence was sufficient, however, from which the jury could have found that the automobile was stolen and transported with the intent that it should be sold through a fence to an ultimate user, and that, having been once placed in interstate commerce, it continued therein until it reached its destination, that is, the purchaser from the alleged fence.[6]

Of the remaining specifications of error it is necessary to discuss only those relating to the cross-examination of the defendant's character witnesses.[7]

5. See Davidson v. United States, 8 Cir., 61 F.2d 250, 255; Cox v. United States, 8 Cir., 96 F.2d 41, 42, 43; Hill v. Sanford, 5 Cir., 131 F.2d 417, 418; cf. Hall v. United States, 8 Cir., 182 F.2d 833, 835.

6. Levi v. United States, 5 Cir., 71 F.2d 353, 354; Parsons v. United States, 5 Cir., 188 F.2d 878, 879; Baugh v. United States, 9 Cir., 27 F.2d 257, 261; Loftus v. United States, 7 Cir., 46 F.2d 841, 847; McNally v. Hill, 3 Cir., 69 F.2d 38, 40, affirmed 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238.

7. Cross-examination of Mrs. Clodine Bedsole:
"Mr. Varner: Have you talked to anybody concerning Mr. Roberson's reputation?
"A. No, sir.
* * * * *
"Mr. Varner: Did you know Herman Roberson in 1938?
"A. Yes, sir.
"Mr. Fuller: Your Honor, I ask the Court to excuse the jury while we go into a matter.
"The Court: It is the proper manner of cross examination of any witness who testified to character and reputation to seek to elicit from her whether or not she knows of any offenses that he has been convicted of, or any offenses that, or any other matter that may be of a derogatory nature, I will expect the Government, as officers of the Court, to not ask something they can't prove and connect later on, in the event it becomes necessary.
"Mr. Davis: We can prove that, we have a record here.

"The Court: Use your judgment.
"Mr. Varner: Mrs. Bedsole, did you know that in September of 1938, Herman Roberson was arrested for transporting liquor?
"Mr. Fuller: I object and ask that it be excluded.
"The Court: Overruled.
"Mr. Fuller: We would like to have an exception.
"Mr. Varner: Did you know that?
"A. Yes, sir.
"Q. Did you know that in 1941 the defendant was sentenced to three years for distilling?
"A. I did.
"Mr. Fuller: We object, and ask to exclude that. The law states that the violation of the prohibition law does not involve moral turpitude.
"The Court: Gentlemen, this evidence is admitted, solely as to whatever light it may shed on this defendant's character and reputation, since it has been put in issue by the defendant, himself. It is not to be considered by you in connection with your determining his guilt or innocence of this offense that he is charged with. You may proceed.
"Mr. Varner: Did you know that in 1947, he was arrested for robbery?
"A. No, sir.
"Q. You didn't know that.
"Mr. Fuller: Your Honor, I would like to ask that question be excluded. Not proper examination.
"The Court: Overruled.
"Mr. Fuller: We would like to have an exception.
"Mr. Varner: Did you know that in August of 1953 he was arrested for disorderly conduct?

In the case relied upon by the district court [footnote (7), supra], Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168, the Supreme Court held that it was not reversible error to permit the United States Attorney to ask the defendant's character witnesses on cross-examination whether they had heard that the accused had been convicted twenty years previously of a violation of the trademark law in New York City, and whether they had heard that twenty-

"A. I did not.

"Q. You didn't know that.

"Mr. Fuller: I would like to make the same objections to questions of this type, and exceptions to each type of question.

"Mr. Varner: And knowing that he was sentenced to three years for distilling and that he had been arrested for transporting whiskey, you nevertheless felt that he had a good reputation.

"A. So far as his honesty, I do.

"Q. Would your opinion be changed by the fact that he had subsequently been arrested for robbery?

"A. I don't think it would.

"Thank you, mam.

"That is all."

Cross-examination of Irvin Russell:

"Mr. Davis:

"Q. Mr. Russell, have you known him intimately for 35 years?

"A. Yes, sir.

"Q. Do you know about his arrest in 1938 for the transportation of whiskey?

"A. I heard something about it, yes.

"Q. Did you hear about his being arrested in Los Angeles in 1941?

"A. Yes, sir, about that particular whiskey case.

"Q. He did run off and was gone three years, wasn't he?

"A. I don't know, sir.

"Q. You heard about his being arrested in Los Angeles, and he made bond in 1938 for that same whiskey, didn't he? He had a $3000.00 bond on him, didn't he on September 21, 1938, you heard about that, didn't you?

"A. I told you I had heard about that.

"Q. You heard about him being arrested for the same whiskey out in California, after you had heard about him being arrested for the same whiskey in 1941, didn't you?

"A. Yes, sir.

"Q. And did you hear about his being convicted for distilling in 1941, and given three years in the State Convict Department in Montgomery, Alabama, there in Crenshaw County?

"A. Yes, sir. That was the same offense.

"Q. Did you hear about his being arrested in Montgomery for robbery on the 9th day of December, 1947?

"A. No, sir. I never heard of that.

"Q. Did you hear about his being arrested for investigation in 1948 in Houston, Texas?

"A. No, sir, I didn't hear it.

"Q. Did you hear about his being arrested in Montgomery for disorderly conduct in August 25, 1953?

"A. I did not.

"Q. From what you did know about his being arrested on that distilling charge and getting a three year sentence in the State Convict Department, does that have any bearing on your opinion of his reputation?

"A. I think that.

"Q. Does that have any bearing on your opinion of his reputation?

"A. No, sir.

"Q. It doesn't? You may come down.

"That is all."

Cross-examination of Dave Rainey:

"Q. Mr. Rainey, had you heard that Herman Roberson made his bond in Crenshaw County in 1938 to appear before the Court?

"A. I had not.

"Q. Had you heard that he jumped that bond, in 1941 in California, he was arrested in California as a fugitive.

"A. I had not.

"Q. Had you heard he was convicted in 1941 in Crenshaw County and given a sentence for distilling, he was given a sentence of three years?

"Mr. Fuller: We object.

"The Court: Overrule the objection. If you will check the opinion of the United States Supreme Court, it will eliminate all these objections, 335 Page 469 U.S. Reports [69 S.Ct. 213]. It holds specifically that this is permissible.

"Mr. Davis: Had you heard in 1947 on December 9, 1947, Herman Roberson was arrested by the police department in Montgomery, Alabama for robbery?

"Mr. Fuller: I object. I had thought, your Honor that any violation of any liquor offense is not an offense of moral turpitude.

"The Court: That is correct.

"Mr. Fuller: And any violation of any city ordinance is not?

"The Court: That is correct.

"Mr. Fuller: And that is the basis of my objection.

seven years previously the accused had been arrested for receiving stolen goods. The Court recognized that it is inadmissible for the defendant to be allowed to disprove the conduct so rumored against him, and that the use of this type of cross-examination is accompanied by grave danger of injustice to the defendant. See Footnote (4), 335 U.S. 473, and see pages 485 and 486, 69 S.Ct. 217, page 223 of the opinion. Mr. Justice Rutledge, with whom Mr. Justice Murphy joined, filed a strong dissenting opinion, and while Mr. Justice Frankfurter concurred in the Court's opinion, he did so "Despite the fact that my feelings run in the general direction of the views expressed by Mr. Justice Rutledge in his dissent". 335 U.S. at page 487, 69 S.Ct. at page 224.

The district court and this Court are, of course, bound by the majority opinion of the Supreme Court, but a careful reading of that opinion persuades us to the view that it marks out the extreme limits of permissible cross-examination. Further, the Supreme Court itself implied essential safeguards which have not been observed in the present case. For example, the Court made repeated note of the fact that the trial court had ascertained *out of the presence of the jury* that the arrest or conviction had actually occurred. 335 U.S. 472, 481, 69 S.Ct. 216, 221, and footnote 18 on the latter page. It further noted that,

> "Since the whole inquiry, as we have pointed out, is calculated to ascertain the general talk of people about defendant, rather than the witness' own knowledge of him, the form of inquiry, 'Have you heard?' has general approval, and 'Do you know?' is not allowed.[19]

In the present case, when this type of cross-examination was first approached, the following occurred:

> "Mr. Varner: Did you know Herman Roberson in 1938?
>
> "A. Yes, sir.
>
> "Mr. Fuller: Your Honor, I ask the Court to excuse the jury while we go into a matter.

"The Court: It is true that the Government could not put those in evidence on the prima facie case, but it is also true that the law is, in the Federal Court, as elucidated by the Supreme Court, that a character witness in a criminal case may be cross examined as to his knowledge or rumors of the defendant's prior arrest, whether or not it culminated in a conviction. And your objection is overruled.

"Mr. Davis. Had you heard that on February 19, 1948, Herman Roberson was arrested by the police department of Houston, Texas?

"A. I had not.

"Q. Had you heard that on the 25th day of August, 1953, that Herman Roberson was arrested by the police department of Montgomery, Alabama, for disorderly conduct?

"A. No, sir. I did not.

"All right. You may come down."
Cross-examination of C. L. Chambers:

"Q. Did you know him in 1937?

"A. No, sir.

"Q. You haven't heard then that he was arrested for transporting liquor in 1938?

"A. No, sir.

"Q. You hadn't heard that he was put under a $300.00 bond and skipped that bond?

"A. No, sir.

"Q. I ask you if you had heard that he was convicted and given three years for distilling in 1941, had you?

"A. No, sir.

"Q. Did you know he was arrested for robbery in 1947?

"A. No, sir.

"That is all."

Cross-examination of the defendant:

"Q. Now, Mr. Roberson, so that we can prove these things, that we have been asking the witnesses about, did you make a bond in Crenshaw County, in the amount of $300.00 on the 23rd day of September, 1938 for the offense of transporting whiskey?

"Mr. Fuller: I object.

"The Court: I sustain that. It is not necessary that you prove it. It is* affirmatively denied and it is not necessary to prove it."

[* Apparently the word "not" has been omitted.]

"19. See Stewart v. United States, 70 App. D.C. 101, 104 F.2d 234; Little v. United States, 8 Cir., 93 F.2d 401; Filippelli v. United States, 9 Cir., 6 F.2d 121." 335 U.S. at page 482, 69 S.Ct. at page 221.

"The Court: It is the proper manner of cross examination of any witness who testified to character and reputation to seek to elicit from her whether or not she knows of any offenses that he has been convicted of, or any offenses that, or any other matter that may be of a derogatory nature, I will expect the Government, as officers of the Court, to not ask something they can't prove and connect later on, in the event it becomes necessary.

"Mr. Davis: We can prove that, we have a record here.

"The Court: Use your judgment."

▉ Thus the district court refused to conduct the inquiry outside the presence of the jury, misconceived the permissible inquiry as being directed to what the witness knows instead of what he has heard, and worst of all, permitted the United States Attorney to assure the jury of the existence of record evidence of the actuality of each arrest and conviction inquired about. While Government counsel conducted the prosecution with commendable vigor, he allowed his zeal to cause him to disregard the precaution so well expressed by Judge Harlan, now Mr. Justice Harlan: "We may also add that it is incumbent on prosecuting attorneys to be scrupulous in not stepping out of bounds on this sort of cross-ex-

amination." United States v. H. Wool & Sons, 2d Cir., 215 F.2d 95, 99.

Further, when the United States Attorney started to cross-examine the defendant "so that we can prove these things" and defendant's counsel objected, the court responded:

"The Court: I sustain that. It is not necessary that you prove it. It is * affirmatively denied and it is not necessary to prove it."

[* Apparently the word "not" has been omitted.]

Of course, the actuality of defendant's prior arrests or convictions was not an issue, and could neither be proved by the Government nor disproved by the defendant. That, however, was not the impression incradicably left in the jury's mind.

Further, the district court overruled objections to questions inquiring "do you know" instead of "have you heard", [footnote (7), supra].

▉ Appellee urges strongly that the defendant did not object on the ground that the question was in the wrong form.[8] Under the circumstances of this case, however, including the court's refusal to conduct the inquiry out of presence of the jury, we agree with the Supreme Court of Alabama that a general objection to such a question was sufficient.[9]

▉ In his final charge to the jury, the learned district judge ably and correctly instructed them.[10] We apprehend,

8. See Kasper v. United States, 9th Cir., 225 F.2d 275, 279; Saunders v. United States, 89 U.S.App.D.C. 291, 192 F. 2d 409, 411.

9. "Undoubtedly, to permit a witness to testify that he had *seen* defendant drunk or drinking, tended to prove character (his drinking proclivities) by specific acts. To permit a witness to testify that he had *heard* that the defendant drank tends to prove the general reputation of defendant for drinking. Character can only be proven by reputation. To change an inquiry as to what a witness had *seen*, to a question as to what a witness had *heard*, is not to reframe the inquiry, but is to ask an entirely different question. And we can think of no way by

which the question actually asked could have been made legal by other evidence.

"As we have indicated the evidence is illegal for any purpose, and cannot be made legal, and general grounds assigned in support of the objection to it was sufficient and should have been sustained."

Echols v. State, 256 Ala. 389, 55 So.2d 530.

10. "You are not to consider any offense that may have been referred to by any question or any answer here, other than the offense that this defendant is charged with. There were certain questions permitted by the Court regarding a whiskey violation or a robbery charge. They were permitted to be asked by the Government in cross-examining certain char-

however, that it was then too late to cure the repeated errors. Before we can accord entire verity to a verdict of guilty, that verdict must result from a trial fairly conducted in every material respect in accordance with the rules of law, and, inadvertently this trial was not so conducted. The judgment is, therefore, reversed and the cause remanded.

Reversed and remanded.

acters or witnesses that testified as to defendant's character. They were permitted and you are to consider them solely in that they were to test the ex-

tent of the character witnesses knowledge of the defendant's character. They are not to be considered by you for any other reason."