**UNITED STATES of America,
Appellee,**

v.

**Russell Eugene BRIDDLE, Appellant.**

**No. 20113.**

United States Court of Appeals,
Eighth Circuit.

Aug. 28, 1970.

Murry L. Randall, St. Louis, Mo., for appellant.

Harold E. Zahner, Asst. U. S. Atty., St. Louis, Mo., for appellee; Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., on brief.

Before VOGEL, GIBSON and BRIGHT, Circuit Judges.

VOGEL, Circuit Judge.

Defendant-appellant was convicted by jury verdict on a one-count indictment which charged:

"That on or about the 27th day of June, 1969, in the County of St. Charles, in the State of Missouri, within the Eastern District of Missouri,

RUSSELL EUGENE BRIDDLE

did receive, conceal, barter, sell and dispose of a certain stolen motor vehicle, that is, a 1967 Cadillac, vehicle identification number F–7141387, which was moving as interstate commerce from New York City, State of New York, to St. Charles County, State of Missouri, and he then knew the motor vehicle to have been stolen.

"In violation of Section 2313, Title 18, United States Code." [1]

Upon such conviction, the defendant was sentenced to a term of five years' imprisonment and to pay a fine of $5,000.

In this direct appeal, defendant requests a reversal on three separate grounds as follows: (1) The evidence was insufficient to show defendant knew the 1967 Cadillac had been stolen; (2) the evidence was insufficient to show that at the time of the alleged offense, on June 27, 1969, when defendant sold the car, the car was still moving as and a part of interstate commerce; (3) the court erred in limiting the cross-examination of the government witness Robert Mudd as to the location, and circumstances surrounding the finding of an alleged secretly placed identification number on the claimed stolen automobile.

A resolution of the claimed errors requires a fairly complete statement of the evidence presented to the trial jury:

Sometime during the night of July 11–12, 1968, a baroque gold 1967 Cadillac convertible, having identification number F7141387, was stolen from the garage of Jerome Charles Friedman in Bayside, New York. At the time of the theft and for some time thereafter the defendant herein was confined in the Missouri penitentiary at Jefferson City, Missouri, serving a five-year sentence. He was released from the Missouri penitentiary on October 31, 1968, so accordingly could not have been an active participant in the theft.

Defendant himself chose not to testify at his trial. His story as to how he acquired the stolen Cadillac in St. Louis, Missouri, was given to an FBI Agent on October 21, 1969, when questioned as

1. "§ 2313. Sale or receipt of stolen vehicles
"Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

to the ownership of the vehicle. He stated to the agent that at "an unrecalled date" he was in a poker game with several individuals. The names of the individuals and the place of the poker game were not given. The defendant said that one of the players, "a stranger from New York", went broke during the poker game, that he had a 1967 Cadillac convertible and wanted to sell it so he, the defendant, gave the stranger $3,850 in cash and the stranger from New York gave him the registration for the car. The registration certificate appeared to have been issued by the State of New York and in the name of one James Mayberg. Concededly it was forged. Defendant took title to the Cadillac under the name of James Ferguson, an alias. He explained to the FBI Agent, when questioned about the matter, that he used the name James Ferguson and also the name Fox "to avoid constant harassment by the St. Louis Police Department".

On April 21, 1969, the defendant, using the name James Ferguson, and the forged New York title to the automobile, registered it with the Missouri Motor Vehicle Registration Unit, paying the sales tax on a purchase price of $3,850 and obtaining a Missouri title issued to him in the name of James Ferguson on May 14, 1969. In doing so, he gave his address as 2730 South 13th Street, St. Louis, Missouri, and the title was sent to such address. Actually, this was the address of a bonding company and automobile license agency where a friend of the defendant's worked.

After having the car repainted and using it for approximately two months, the defendant traded it to the Ken Bender Buick Pontiac Automobile Agency in St. Charles, Missouri, as partial payment for a 1969 Buick Electra demonstrator. One or two days later he traded the Buick through the same agency for a new 1969 Buick Riviera. Defendant took title to both of the cars in the name of James Ferguson and in dealing with the agency he used the same

name. In making the latter automobile purchases, defendant gave his address as that of a St. Louis cafe located at 4111 Manchester.

During the time the defendant had the Cadillac from sometime in April to June 1969, its gold color was repainted blue with a black top. The evidence indicated that the public serial numbers on the 1967 Cadillac had been changed. This, however, was not discovered by the Ken Bender Agency either when they purchased the Cadillac from the defendant or later sold it. Subsequently it was discovered that the public serial numbers on the Cadillac had been changed to numbers which were actually on a 1967 gold Cadillac convertible owned in the State of New Jersey. Sergeant Robert Mudd, Missouri State Highway Patrol, testified that all such automobiles have their serial number placed in one confidential location in addition to three known public locations. He found the so-called confidential number on the automobile and ascertained it to be F7141387, the serial number of the automobile which had been owned by and stolen from Mr. Friedman on June 11–12, 1968. Mudd testified that the location of the confidential number was not published in any document, that its location on this car was given to him by word of mouth from the National Auto Theft Bureau. In cross-examination of Mudd, the trial court refused to permit questions of the witness as to the location of the confidential number. In addition to the confidential number to which Mudd testified, he also said that in the inside of the trunk there appeared a sort of "Fleet sticker". Mr. Friedman, the original owner of the Cadillac automobile, testified that he had placed such a sticker to the back of the inside panel in the trunk of the car, thus further adding to the identification.

■ In considering this appeal and particularly defendant's first two points involving the defendant's challenge as to the sufficiency of the evidence, we must, as an appellate court, view that evidence in the light most favorable to

sustaining the jury verdict, and we accept as established all reasonable inferences that tend to support the jury's determination. United States v. Lodwick, 8 Cir., 1969, 410 F.2d 1202; Kayser v. United States, 8 Cir., 1968, 394 F.2d 601, cert. denied 393 U.S. 919, 89 S.Ct. 250, 21 L.Ed.2d 206.

I. Defendant's first point challenges the sufficiency of the evidence upon which the jury determined that the defendant knew the Cadillac was stolen. We think the evidence in that regard is more than sufficient. We enumerate some of the factors upon which the jury may have relied in their determination of knowledge on the part of the defendant that the Cadillac was a stolen vehicle.

1. It was purchased at nighttime from "a stranger from New York", called Jim.

2. It was paid for in cash.

3. Defendant took title in the name of James Ferguson, which was an alias.

4. Defendant gave as his address one other than that where he resided.

5. He applied for a transfer of title to Missouri using the name James Ferguson and again gave a different address than his actual residence.

6. Defendant had the gold car painted blue, obviously in an effort to disguise it.

7. When the defendant traded the car in toward a 1969 Buick demonstrator, he handled the transaction in the name of James Ferguson, again giving an address other than that at which he actually resided.

8. Defendant allegedly purchased the car in April for $3,850 cash but accepted a trade-in credit of only $3,269 approximately two months later.

9. When he traded the Buick demonstrator in for a new 1969 Buick Riviera, he again did business in the name of James Ferguson and again gave an address other than that at which he actually resided.

■ We believe this evidence ample for the jury's use in arriving at the con-clusion that the defendant was well aware of the fact that the 1967 Cadillac convertible which he purchased sometime in April was a stolen vehicle. Possibly no one or two of the aforementioned facts would, in themselves, justify a holding that the defendant had knowledge that the car was stolen. Nevertheless, in totality we think they amply support the conclusion of knowledge on the part of the defendant and accordingly we find no error on his first contention.

II. Defendant next presents the question of whether the evidence was sufficient to show that at the time of the alleged crime, i. e., June 27th when the stolen car was traded in for a demonstrator, it was still a part of interstate commerce. Had the vehicle come to rest and not reentered commerce, its character would then destroy any application of the so-called Dyer Act.

■ Ordinarily, the question of when a stolen car has been removed from interstate commerce and entered intrastate commerce is to be resolved by the jury. Powell v. United States, 5 Cir., 1969, 410 F.2d 710; Roberson v. United States, 5 Cir., 1956, 237 F.2d 536; cf. Lee v. United States, 8 Cir., 1966, 363 F.2d 469, at 475, cert. denied 385 U.S. 947, 87 S.Ct. 323, 17 L.Ed.2d 227. No hard and fast rule can or should be made; rather, each case must stand or fall on its own merits. See, Annotation, Validity and Construction of the National Motor Vehicle Theft Act, 56 A.L. R.2d 1309, at 1340. The mere fact that a completed sale has taken place does not in and of itself destroy operation of the Act and the car may even reenter interstate commerce after it has once come to rest. See, United States v. Cioffi, 2 Cir., 1958, 253 F.2d 494.

■ Nor is there any mathematically precise rule on how long a defendant may hold a car before it loses its interstate character. Compare United States v. Johnson, 7 Cir., 1969, 409 F.2d 861, and Williams v. United States, 4 Cir., 1957, 244 F.2d 303, with Davidson v. United States, 8 Cir., 1932, 61 F.2d 250. The

test, therefore, is not the length of time the car is held or how often it was resold, but what was done with the car after it came into the defendant's possession. The Sixth Circuit has succinctly enunciated the principles and tests to be applied in Schwachter v. United States, 1956, 237 F.2d 640, at 644, wherein it said:

"* * * It is recognized that the interstate movement of a car does not necessarily cease when the car stops and transportation of it into the other state ends. The sale thereafter may be an incident to the theft and transportation and so tied up with it as to constitute the final step of a continuous unlawful scheme. McNally v. Hill, 3 Cir., 69 F.2d 38; Id., 293 U.S. 131, 135, 55 S.Ct. 24, 79 L.Ed. 238. But its character of being a part of interstate commerce does not continue indefinitely after its transportation ends. After a period of time and depending upon what is done with the car, it may no longer be correct to treat it as moving in interstate commerce. Grimsley v. United States, 5 Cir., 50 F.2d 509; Davidson v. United States, 8 Cir., 61 F.2d 250, 255. The acquisition of the car and later sale of it by a person who is in no way connected with the theft and transportation may be under such circumstances as to terminate its interstate character. It is a question of fact under the surrounding circumstances in each particular case. Being a question of fact it is for the jury to determine. Parsons v. United States, 5 Cir., 188 F.2d 878; United States v. Gollin, 3 Cir., 166 F.2d 123, certiorari denied 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151; Seefeldt v. United States, 10 Cir., 183 F.2d 713, 715."

Under the foregoing rules, we think it apparent that the jury had sufficient basis here to determine the car was still in commerce. First, there can be little doubt that defendant's purchase of the car in April from "the stranger from New York" was well within the scope of the Dyer Act and that the car was still in interstate commerce at that time. United States v. Brady, 8 Cir., 1970, 425 F.2d 309, at 312–313. Second, as has been pointed out before, defendant knew the car was stolen. Third, defendant thereupon repainted the car, i. e., concealed it. Fourth, defendant traded it in for another make and model. In short, defendant disguised the car and then used it as trade-in value for a vehicle with a valid title and serial numbers. The jury could infer his resale was the final act in a scheme to dispose of a stolen car that was still in commerce. Roberson v. United States, supra, 237 F.2d 536, at 538. The fact that he took two months to accomplish his illegal purpose is not determinative of the commerce question. Powell v. United States, supra, 410 F.2d 710; United States v. Johnson, supra, 409 F.2d 861; Roberson v. United States, supra, 237 F.2d 536.

Defendant cites and strongly relies upon our case of Davidson v. United States, 8 Cir., 1932, 61 F.2d 250. There, our court stated in substance that, "* * * it is entirely consistent with the evidence" that the automobile there stolen in Oklahoma and transported in interstate commerce to Kansas City, Missouri, lost its interstate character when it was placed in storage in a garage in Kansas City. Each case, however, must be determined on its own facts, and we find the facts in *Davidson* distinguish it from the instant case. Additionally, *Davidson* was reversed on the ground that the indictment was faulty in that it did not actually charge a federal violation. Therein we said, at page 255 of 61 F.2d:

"* * * There is entirely omitted from the indictment any charge to the effect that the vehicle at the time it is charged to have been received, concealed, and stored, was moving as or was a part of, or that it constituted, interstate or foreign commerce. It is no offense against any federal statute to receive or conceal, or to store a car that has been stolen, * * *."

We are impelled to the conclusion that there was sufficient evidence herein for

the jury to have determined that the interstate commerce character of the stolen Cadillac had not terminated when the defendant traded it in to the Ken Bender Buick Pontiac Automobile Agency (undoubtedly doing an interstate business) in June 1969 and that the things the defendant did after acquiring the Cadillac in April were mere steps in the further interstate motion of the car. We accordingly find no error on point No. 2.

III. Defendant's third and last contention is that the court erred to his prejudice by limiting the cross-examination of the government witness Sergeant Robert Mudd as to the location and circumstances surrounding the finding of the alleged secret number on the stolen Cadillac.

■ Robert Mudd was a Sergeant with the Missouri State Highway Patrol and an expert on car identification. On August 11, 1969, he was asked to examine the 1967 Cadillac convertible involved herein. He testified that on a 1967 Cadillac the serial number or motor vehicle identification number appears in four places. Such number appears in three locations known generally by the public. A fourth place for the appearance of the identification number is allegedly secret, unknown to the public, information as to which was passed by word of mouth from the National Auto Theft Bureau. He found that the number stamped on the Cadillac motor block was F7296019 and that it had obviously been altered. Another public location for the identification number was on the top of the frame under the hood on the right-hand side of the vehicle. This also was F7296019. This was the number used by the poker-playing stranger from New York in transferring the forged title to the vehicle to the defendant herein, and was also the legitimate number of a 1967 gold Cadillac convertible owned by Verna Cronin of Short Hills, New Jersey. Mudd's further examination disclosed that the secret or confidential location of the serial number bore the number F7141387. This was the legitimate number of the car purchased by Jerome Friedman in November 1966 and which was stolen from his garage on the night of July 11–12, 1968. Mudd discovered through examination that the original color of the car was gold and it had been painted a light blue with a black top. Further identification as being the vehicle stolen from Mr. Friedman's garage indicated that there was a Fleet auto sticker pasted inside the trunk. Mr. Friedman had prior thereto said he personally pasted the Fleet sticker in the back of the inside panel of the trunk of the car when he purchased it.

In cross-examination of Sergeant Mudd, counsel for the defendant attempted to elicit information with reference to the location of the so-called secret or confidential number. The trial judge indicated that he would sustain objection thereto. The following occurred outside the hearing and presence of the jury:

"THE COURT: You haven't examined the car then?

"MR. GODFREY [Attorney for the defendant]: I have not examined the car.

"THE COURT: Let me ask you this. You have given instructions in which you would indicate you don't question the fact that this automobile was stolen, isn't that correct?

"MR. GODFREY. Yes, sir.

"THE COURT: So your defense in this case is not based on where this confidential number is or whether this was stolen, isn't that correct?

"MR. GODFREY: However, the cross-examination of this witness could very easily show the defendant is not guilty because this vehicle has not been identified.

"THE COURT: If this becomes a matter of record in this court, and the reason I told you the other day we are not going to get into this is that this then becomes available to everybody in the whole United States, once it is testified to. If I thought it was anything of any importance as far as the defendant is concerned, I would let it go in but I don't think it is and I am going to sustain the objection."

Of course, the crux of the question was the identification of the vehicle as being the one stolen from the original owner, Jerome Friedman. We think the identification of the car was sufficiently detailed aside from the evidence of the secretly located serial number. It was identified as a 1967 Cadillac convertible, baroque gold in color, over-painted blue with a black top. It bore a Fleet auto rental sticker on the inside of the trunk, placed there by the original purchaser. Its public numbers had been tampered with. We think then that if there was error in denying defendant's attorney the right to cross-examine on the location of the secret number, it was error without prejudice and agree with Judge Meredith's handling of the situation. In Williamson v. United States, 5 Cir., 1959, 272 F.2d 495, 497, cert. denied, 1960, 362 U.S. 920, 80 S.Ct. 672, 4 L.Ed.2d 740, the court had a similar question raised on appeal. In affirming conviction, that court said:

"  *  *  * At no time has the appellant disputed the fact that the car in question was a car alleged to have been stolen by the defendant. Further, there is nothing to indicate that the location of the serial number would be material or that by inspection and discovery of the number or the location the testimony of the agent might be impeached. Confining ourselves closely to the facts of this case, we are of the opinion that no prejudice resulted to the appellant through the motion of the trial court. United States v. Mc-Curry, D.C.Pa.1956, 146 F.Supp. 109, at page 111, affirmed 3 Cir., 248 F.2d 116; United States v. Wheeler, 7 Cir., 1955, 219 F.2d 773, at 775, certiorari denied 349 U.S. 944, 75 S.Ct. 872, 99 L.Ed. 1271."

Later the same court in Gurleski v. United States, 5 Cir., 1968, 405 F.2d 253, 266, cert. denied, 1969, 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 763, said:

"Appellant next insists that the trial court committed reversible error in not allowing him to cross-examine Agent Powers as to the location of these secret identification numbers. The gist of this contention is that the numbers might have been located on some easily removable part of the automobile and that someone might have tampered with the evidence or that the evidence might not be accurate. However, appellant laid no foundation for proceeding on such a theory, and location of the secret identifying numbers appears to be wholly irrelevant to any defense asserted by Smith. Just as the prosecution need not generally divulge the name of an informer unless some materiality is shown, they need not reveal the location of these marks, which are a highly valuable tool to law enforcement officers in discovering and solving car thefts. In addition, this court has already answered this question contrary to appellant's contention in Williamson v. United States, 272 F.2d 495 (5 Cir. 1959) cert. den. 362 U.S. 920, 80 S. Ct. 672, 4 L.Ed.2d 740. The trial judge's ruling did not deprive defendant of his right of cross-examination."

Nothing has been shown here for a need on the part of the defendant for the confidential information with reference to the secret number. We accordingly find no error.

Affirmed.